IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HEATHER ANN MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 1:06-CV-01252 |
| v. | ) | |
| | ) | |
| ELI LILLY AND COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DEFENDANT ELI LILLY AND COMPANY'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

This is a products liability action allegedly involving the prescription drug diethylstilbestrol ("stilbestrol" or "DES"), an unpatented synthetic estrogen used for decades to treat a variety of conditions, including the treatment of some types of cancer and some accidents of pregnancy. On June 28, 2006, plaintiff Heather Ann Moore ("Plaintiff") filed this action against Eli Lilly and Company ("Lilly") alleging her mother, Joyce Glynn, ingested DES during her pregnancy with Plaintiff in 1969-70 and that, as a result, Plaintiff sustained a number of injuries, including uterine and cervical malformations and infertility. Lilly now moves for summary judgment because the undisputed facts and relevant law establish that Plaintiff's claims fail as a matter of law.

Under New Hampshire law, a plaintiff must prove in a prescription drug case like this that the manufacturer failed to provide adequate warnings and that this failure was the proximate cause of plaintiff's injuries. Each of the claims asserted – negligence, strict liability, breach of warranty and misrepresentation – ultimately rest on plaintiff's allegation that Lilly's written product literature and warnings were inadequate. Each claim, then, necessarily rests on

2389261v2

the premise that those written materials were read and relied upon by the prescribing physician – the learned intermediary – and that the physician would not have prescribed the drug had adequate materials and warnings been supplied. However, plaintiff cannot meet her burden of proving proximate causation in this case because there is no evidence that Dr. Anderson, who plaintiff alleges prescribed DES for her mother, read and relied on anything from Lilly in deciding to prescribe DES for Mrs. Glynn. Accordingly, in the absence of admissible evidence that Dr. Anderson read and relied specifically on Lilly's warnings in prescribing DES for her mother, plaintiff cannot prove a different warning by Lilly would have prevented her alleged injuries and Lilly is entitled to judgment as a matter of law.

Second, because there is no evidence that any alleged express warranty made by Lilly ever became the basis of a bargain with Dr. Anderson, that Lilly breached any implied warranty, or that plaintiff ever provided Lilly notice of any alleged breach of warranty by Lilly, her breach of warranty claim fails as a matter of law. Further, plaintiff's breach of warranty claim is time barred.

Finally, because there is no evidence that Dr. Anderson ever relied on any representation from Lilly in allegedly prescribing DES for plaintiff's mother, Lilly is entitled to summary judgment as to plaintiff's misrepresentation claim as well.

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1.    Plaintiff alleges that her mother, Joyce Glynn, ingested DES during her pregnancy with Heather Moore in 1969-70 and that, as a result, plaintiff sustained certain injuries.[1]  (Plaintiff's Complaint, ¶¶ 3, 4; Plaintiff's Answers to Defendant's First Set of Interrogatories, Nos. 12 & 13, excerpts attached hereto as **Exhibit 1**.)

---

[1]    For purposes of this motion <u>only</u>, Lilly does not contest plaintiff's allegations and testimony cited herein, including her allegation that she sustained injuries she alleges were caused by DES exposure.  However, if

2389261v2

2.    Plaintiff's mother was pregnant with her in 1969-70 in Nashua, New Hampshire. (Exhibit 1, No. 11; Deposition of Joyce Glynn, attached hereto as **Exhibit 2**, at p.40.)

3.    Plaintiff alleges that Dr. Carl Anderson prescribed DES for plaintiff's mother during her pregnancy with plaintiff. (Exhibit 1, No. 20.)

4.    Mrs. Glynn testified that she does not know what, if anything, Dr. Anderson referenced or consulted regarding the DES she claims to have taken during her pregnancy with plaintiff. (Exhibit 2, at p. 40.)

5.    Mrs. Glynn testified that she does not remember if Dr. Anderson told her the name of the pills he prescribed for her at the time he prescribed them, but told her that "he was going to give me some pills that would help me keep my pregnancy going." (*Id.* at p. 40, lines 1-7.)

6.    Mrs. Glynn testified that she does not recall any details about the bottle or the label on the bottle of the medication she testified to taking during her pregnancy with plaintiff. (*Id.* at p. 52.)

7.    Mrs. Glynn testified that she took two different pills during her pregnancy with plaintiff, both a 5 and a 25 milligram pill. (*Id.* at pp. 17-18.)

8.    Mrs. Glynn testified that she does not know what company manufactured the pills she says she took during her pregnancy with plaintiff. (*Id.* at pp. 51; 53.)

9.    More than 55 companies offered for sale DES in dosage sizes indicated for use in pregnancy in 1969-70. (*See* affidavit of John Chadwick Coots, attached hereto as **Exhibit**

---

this action is not disposed of by this motion for summary judgment, Lilly will present evidence at trial and contend, among other things, that plaintiff has failed to prove that her alleged DES exposure caused her to sustain any injuries. In particular, Lilly will present expert testimony, evidence from the medical records, and other evidence that plaintiff's medical problems are unrelated to DES exposure.

3

**3, Attachments 1 and 2** (1969 and 1970 Drug Topics Red Book and 1969-70 American Druggist Blue Book).)

10.    Plaintiff was born on June 4, 1970 in Newton-Lower Falls, Massachusetts. (Exhibit 1, No. 1.)

11.    Plaintiff admits that she does not know who manufactured the DES to which she was allegedly exposed.  (Deposition of Plaintiff Heather Moore., attached hereto as **Exhibit 4**, at p. 10.)

12.    Mrs. Glynn testified that she was provided a "stilbestrol schedule" by Dr. Anderson when he prescribed the medication she testified to having taken during her pregnancy with plaintiff. ( Exhibit 2 at pp. 42-43.)

13.    Plaintiff has identified no other records of her mother's pregnancy with her, including any pharmacy records, in response to Lilly's discovery requests.   (Plaintiff Heather Ann Moore's Responses to Eli Lilly and Company's First Request for Production of Documents or Tangible Things, excerpts attached hereto as **Exhibit 5**, Nos. 2, 5, & 16. )

14.    Mrs. Glynn testified that she last saw Dr. Anderson in "probably 1980" and does not know if he is still alive.  (Exhibit 2, at p. 37.)

## LAW AND ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the moving party is entitled to judgment as a matter of law based on the undisputed material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Id.* at 327.

4

The party moving for summary judgment bears the initial responsibility of identifying the documents and testimony which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Once the moving party has shown the absence of a genuine issue of material fact, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-250 (1986). The non-moving party must do more than express doubt as to the truth of the moving party's factual submissions, and must show "concrete evidence from which a reasonable juror could return a verdict in his favor." *Id.* at 256. Showing "some metaphysical doubt" as to the material facts, making conclusory allegations or unsubstantiated assertions, or by offering only a "scintilla" of evidence is not sufficient to satisfy the non-movant's burden. *See Id.* at 252; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## II.     PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW BECAUSE PLAINTIFF CANNOT ESTABLISH THAT LILLY'S ALLEGED FAILURE TO ADEQUATELY WARN MRS. GLYNN'S PRESCRIBING PHYSICIAN PROXIMATELY CAUSED HER ALLEGED INJURIES

### A.     New Hampshire Law Applies to Plaintiff's Claims

In determining whether to apply another state's law to a tort case, the District of Columbia applies a governmental interests approach. *Nix v. Hoke*, 139 F. Supp. 2d 125, 131 (D.D.C. 2001). Under this analysis, when more than one state has an interest in applying its own laws to the facts of the case, the District of Columbia will apply the law of the state that has the greatest interest in the controversy. *Id.* To determine which state has the "greatest interest" in applying its laws to the case, a court must consider four factors enumerated in the Restatement (Second) of Conflict of Laws: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of

5

incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.*; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).

Applying the above analysis to the facts in this case establishes that New Hampshire substantive law applies to plaintiff's claims. Under the first step of the analysis -- the place of alleged injury -- there can be no dispute that New Hampshire is the state where plaintiff's alleged injuries occurred. Plaintiff's mother resided in Nashua, New Hampshire throughout her pregnancy with plaintiff. (SOF, ¶ 2.) Plaintiff alleges that her *in utero* exposure to DES caused her to develop reproductive tract abnormalities that led to her alleged injuries. (SOF, ¶ 1.) Based on these facts, plaintiff's physical injuries occurred, if at all, in New Hampshire. Thus, under § 145 of the Restatement, New Hampshire is the place where plaintiff was allegedly injured.

Courts have frequently applied the law of the place of exposure in cases involving injuries allegedly caused by DES. *See, e.g., In re DES Cases*, 789 F. Supp. 552, 567 (E.D.N.Y. 1992), *appeal dismissed*, 7 F.3d 20 (2d Cir. 1993) (holding that "the locus of a tort for choice-of-law purposes is 'the place where the last event necessary to make the actor liable occurred'" and finding the relevant "last event" to be the "ingestion of DES by plaintiffs' mothers or the birth of the injured child"); *Tidler v. Eli Lilly and Co.*, 95 F.R.D. 332, 334-35 (D.D.C. 1982) (injury occurred where mothers obtained and ingested DES); *Besser v. E.R. Squibb & Sons, Inc.*, 146 A.D.2d 107, 112 n.3 (N.Y. App. Div. 1989), *aff'd*, 552 N.E.2d 171 (N.Y. 1990) (injuries from DES occur at time and place of exposure). *Cf. Hall v. Merck, Sharpe & Dohme*, 774 F. Supp. 601, 603 (D. Kan. 1991) (place of purported injury is where product was ingested, not where symptoms later manifested).

6

2389261v2

The second factor of the choice of law analysis -- the place where the conduct allegedly causing injury occurred -- also dictates that New Hampshire substantive law applies to this case. Specifically, plaintiff's mother was pregnant with plaintiff in New Hampshire. (SOF, ¶ 2.) Although plaintiff's mother's doctor allegedly prescribed her DES in Massachusetts and she allegedly purchased DES in Massachusetts (Exhibit 1, No. 20.), plaintiff was allegedly exposed to DES *in utero* in New Hampshire. (SOF, ¶ 2.)

The third factor of the analysis, which looks at the domicile, residence, nationality, place of incorporation and place of business of the allegedly exposed parties, is at best a non-indicator. *See Herbert v. District of Columbia*, 808 A.2d 776, 780 (D.C. 2002) (determining that "residency is not dispositive in [the government interests] analysis" when residency is the only factor "weighing against an otherwise straightforward analysis" favoring the application of another state's laws.). Plaintiff is a resident of Maryland. (*See* caption of Complaint.) Lilly is incorporated and has its principal place of business in Indiana. Thus, under prong three of the analysis, Maryland and Indiana each have an interest in having their laws applied to this case.

The final factor directs that either New Hampshire or Massachusetts substantive law applies in this case. In looking at the place where the relationship, if any, between the parties is centered, such a relationship existed, if at all, in either New Hampshire or Massachusetts. Plaintiff's mother was pregnant with her and, as such, plaintiff was allegedly exposed to DES in New Hampshire. (SOF, ¶ 2.) Plaintiff's mother was allegedly prescribed and she allegedly purchased DES in Massachusetts. (Exhibit 1, No. 20.) An analysis of the four factors under § 145 of the Restatement reveals, however, that although some factors point to more than one state, New Hampshire's substantive law applies because it is the state of

7

plaintiff's alleged DES exposure and is one of only two states where the relationship of the parties, if any, was centered.

**B.    Because the Subject Matter of This Case is A Prescription Drug, The Learned Intermediary Rule Applies.**

Under New Hampshire law, a drug manufacturer's duty to warn runs to the prescribing physician and not to the ultimate consumer of the product. *Nelson v. Dalkon Shield Claimants Trust*, 1994 WL 255392, *4 (D.N.H. 1994) (*citing Knowlton v. Deseret Medical, Inc.*, 930 F.2d 116, 120 n. 2 (1st Cir. 1991) (additional citations omitted). The rationale underlying the learned intermediary rule is that the prescribing physician, as the "learned intermediary" standing between the manufacturer of the product and the patient, is generally in the best position to evaluate the potential risks and benefits of the prescribed product and to advise the patient accordingly. *Id.* (*citing Garside v. Osco Drug, Inc.*, 976 F.2d 77, 80 (1st Cir. 1992) (additional citation omitted)).[2]

**C.    Plaintiff Must Prove That Lilly's Alleged Failure to Adequately Warn Mrs. Glynn's Prescribing Physician Proximately Caused Her Alleged Injuries.**

In her Complaint, plaintiff generally alleges that Lilly was negligent in its ". . . failure to warn, over-promotion of DES, and failure to heed and report adverse studies regarding the safety and efficacy of DES . . ." Complaint, ¶ 5 (Count I). Plaintiff further alleges: "DES was sold by Defendant without sufficient warning or instructions." (*Id.* at ¶ 10 (Count II)); ". . . Defendant marketed and promoted DES accompanied by implied and express warranties and representations to physicians and their patients that the drug was efficacious as a miscarriage preventative, and was safe for pregnant women and their unborn children if used as directed for

---

[2]    Both Maryland and Massachusetts apply the learned intermediary doctrine in pharmaceutical cases. *See Weinberger v. Bristol-Meyers Co.*, 652 F. Supp. 187, 189-90 (D. Md. 1986); *Miller v. Bristol-Meyers Squibb Co.*, 121 F. Supp. 2d 831, 838 (D. Md. 2000); *Gurski v. Wyeth-Ayerst Div. of American Home Products Corp.*, 953 F. Supp. 412, 415 (D. Mass. 1997)

2389261v2

such purposes." (*Id.* at ¶ 15 (Count III)); "Defendant represented to pregnant women, including the mother of Plaintiff and her attending physicians, in promotion campaigns, advertisements, labeling, and literature that DES was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them." *Id.* at ¶ 20 (Count IV). Succinctly, plaintiff's Complaint, and each count thereof, are based upon the alleged inadequacy of Lilly's product literature.

Under New Hampshire products liability law, an "inadequate warning constitutes a design defect." *Willard v. Park Industries, Inc.*, 69 F. Supp.2d 268, 272 (D.N.H., 1999) (*citing Duford v. Sears, Roebuck & Co.*, 833 F.2d 407, 411 (1st Cir. 1987); *see also Nelson*, 1994 WL 255392, *4 ("The duty to warn is part of the general duty to design, manufacture and sell products that are reasonably safe for their foreseeable uses.").[3] In addition to the requirement that she establish proof of an inadequate warning, plaintiff must also establish that the lack of an adequate warning caused her alleged injury. *Id. See also Nelson*, 1994 WL 255392, *5.[4]

### D. Plaintiff Cannot Prove That a Different Warning By Lilly Would Have Changed Dr. Anderson's Alleged Decision to Prescribe DES for Mrs. Glynn.

Plaintiff must establish that an adequate warning regarding the alleged risks associated with the ingestion of DES would have altered the conduct of her mother's physician in treating her during her pregnancy with plaintiff. *Nelson*, 1994 WL 255392, * 6. Published opinions that embrace this proposition are legion.[5]

---

[3]    Lilly denies that plaintiff can establish that Lilly failed to provide adequate warnings for DES. For purposes of this Motion, however, Lilly is only addressing whether the alleged failure to warn proximately caused plaintiff's alleged injuries.

[4]    *See also MacDonald v. Ortho Pharm Corp.*, 475 N.E. 2d 65, 70-72 (Mass. 1985); *Higgins v. Diversey Corp.*, 998 F. Supp. 598, 604 (D. Md. 1997), *aff'd*, 135 F.3d 769 (4th Cir. 1998).

[5]    *See, e.g., Thomas v. Hoffman-La Roche, Inc.*, 731 F. Supp. 224, 229 (N.D. Miss. 1989), *aff'd*, 949 F.2d 806 (5th Cir. 1992) ("A plaintiff in a prescription drug products liability case has the burden of proving that an

2389261v2

In the present case, there is no evidence that Dr. Anderson ever read anything from Lilly regarding DES. In fact, during the time period DES was manufactured in dosage sizes indicated for use in pregnancy, hundreds of companies produced the drug. *See Sindell v. Abbott Laboratories*, 607 P.2d 924, 935 (Cal. 1980), *cert. denied*, 449 U.S. 912 (1980) ("At least

---

adequate warning to the prescribing physician would have altered the physician's conduct."); *Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1003-04 (4th Cir. 1992) (manufacturer was entitled to summary judgment because plaintiff failed to demonstrate that the additional non-disclosed risk was substantial enough to have changed the treating physician's decision to prescribe the product for the plaintiff; *Willett v. Baxter Intern., Inc.*, 929 F.2d 1094, 1098-99 (5th Cir. 1991) ("Because the defective aspect of the product must cause the injury, the plaintiff must show that a proper warning would have changed the decision of the treating physician, i.e., that but for the inadequate warning, the treating physician would not have used or prescribed the product."); *In re Norplant Contraceptive Prods. Liab. Litig.*, 955 F. Supp. 700, 710 (E.D. Tex. 1997), *aff'd*, 165 F.3d 374 (5th Cir. 1999) (In a prescription drug failure-to-warn case, plaintiffs must demonstrate that a proper warning would have changed the decision of the treating physician); *Mascarenas v. Union Carbide Corp.*, 492 N.W.2d 512, 517 (Mich. App. 1992) ("To establish a *prima facie* case that a manufacturer's breach of its duty to warn was a proximate cause of an injury sustained, a plaintiff must present evidence that the product would have been used differently had the warnings been given."); *Wheat v. Pfizer, Inc.*, 31 F.3d 340, 343 (5th Cir. 1994) (plaintiffs who claim that a package insert is inadequate must demonstrate that a proper warning would have changed the decision of the treating physician); *Stanback v. Parke, Davis & Co.*, 657 F.2d 642, 646 (4th Cir. 1981) (manufacturer was entitled to summary judgment where the record conclusively demonstrated that the prescribing physician's decisions and actions "would not have been affected in the least by the communication of an adequate warning"); *Windham v. Wyeth Labs., Inc.*, 786 F. Supp. 607, 612 (S.D. Miss. 1992) (noting that, if a further warning would not have altered a prescribing physician's conduct, then any failure to warn could not have been the proximate cause of plaintiff's injuries); *Krasnopolsky v. Warner-Lambert Co.*, 799 F. Supp. 1342, 1347 (E.D.N.Y. 1992) (summary judgment entered in manufacturer's favor because prescribing physician had testified during his deposition that he would not have acted otherwise even if the warnings had been different); *Thomas v. Hoffman-La Roche, Inc.*, 949 F.2d 806, 814 (5th Cir.), *cert. denied*, 504 U.S. 956 (1992) (in a failure-to-warn case involving a prescription drug, Mississippi law requires plaintiff to establish, *inter alia*, that an adequate warning would have prevented the treating physician from administering the drug); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 911 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992) (pursuant to the learned intermediary doctrine, plaintiff in an inadequate warnings case must show that an adequate warning would have caused the physician to act differently; *Nichols v. Clare Community Hosp.*, 476 N.W.2d 493, 496 (Mich. App. 1991) ("To establish the element of proximate causation, a plaintiff must show that an adequate warning would have prevented the plaintiff's injury by altering the prescribing doctor's conduct or that the doctor might have heeded the warning."); *Mowery v. Crittenton Hosp.*, 400 N.W.2d 633, 638 (Mich. App. 1986) (manufacturer was entitled to summary judgment because prescribing physician's testimony established that further warnings would not have led the physician to have prescribed any differently; *Williams v. Lederele Labs.*, 591 F. Supp. 381, 387 (S.D. Ohio 1984) (in determining whether the alleged failure to warn was the proximate cause of the complained-of injuries, the test is "whether the evidence affirmatively establishes that a physician would not have responded differently had he received an adequate warning"); *Vaughn v. G.D. Searle & Co.*, 536 P.2d 1247, 1250 (Ore. 1975), *cert. denied*, 423 U.S. 1054 (1976) (jury verdict in plaintiff's favor was reversed because "there was no evidence that even a properly warned physician would have treated plaintiff differently or removed her from defendant's oral contraceptive prior to her stroke"); *Plummer v. Lederele Labs.*, 819 F.2d 349, 358 (2d Cir. 1987) (failure-to-warn claim failed because "plaintiff failed to prove that a proper warning would have altered the doctor's conduct"); *Dunn v. Lederele Labs.*, 328 N.W.2d 576, 582 (Mich. App. 1982) ("Plaintiffs must show that an adequate warning would have prevented the disease by altering the doctor's conduct.").

10

200 manufacturers produced DES[.]")  More than 55 companies offered for sale DES in dosage

sizes indicated for use in pregnancy in 1969-70, the time period plaintiff's mother was pregnant

with her.  (SOF, ¶ 9.)  Mrs. Glynn testified that she does not know what, if anything, Dr.

Anderson referenced or consulted regarding the DES she says she took while pregnant with

plaintiff Heather Moore.  (SOF, ¶ 4.)  Nor does she know if he is still alive.  (SOF, ¶ 15.)

Accordingly, plaintiff can offer no evidence from any source, including Dr. Anderson, regarding

any information he may have reviewed concerning DES.  As such, plaintiff cannot prove that Dr.

Anderson was even aware that Lilly's warnings existed at the time he allegedly prescribed a

Lilly product to Mrs. Glynn.  In the absence of any evidence that Dr. Anderson relied upon

Lilly's warnings, as opposed to warnings distributed by one of any of the over 200 other

manufacturers of DES,  plaintiff cannot prove that a different warning by Lilly would have

changed Dr. Anderson's prescribing decision.  Accordingly, plaintiff cannot establish that Lilly's

alleged failure to warn proximately caused plaintiff's alleged injuries – an essential element of

her cause of action – and Lilly is entitled to judgment as a matter of law.

III.   **PLAINTIFF'S BREACH OF WARRANTY CLAIM FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF CANNOT ESTABLISH THAT ANY WARRANTY BECAME A BASIS OF THE BARGAIN, THAT ANY IMPLIED WARRANTY WAS BREACHED, OR THAT SHE GAVE NOTICE OF ANY ALLEGED BREACH OF WARRANTY**

A.   **Plaintiff's Breach of Warranty Claim Fails as a Matter of Law Because Plaintiffs Cannot Prove that Any Claimed Warranty was Made Part of the Basis of the Bargain or That Any Alleged Implied Warranty Was Breached.**

In her Complaint, plaintiff alleges that Lilly "marketed and promoted DES

accompanied by implied and express warranties and representations to physicians and their

patients that the drug was efficacious as a miscarriage preventative, and was safe for pregnant

women and their unborn children if used as directed for such purposes."  Complaint, ¶ 15.

11

2389261v2

Plaintiff further alleges that Lilly breached these alleged express and implied warranties. *Id.* at ¶¶ 17-18.

In New Hampshire, the causes of action for implied and express warranties are derived from the Uniform Commercial Code. *Thomas v. King Ridge, Inc.*, 771 F.Supp. 478, 482 (D.N.H. 1991) (citations omitted.) To establish her breach of express warranty claim, plaintiff must prove that Dr. Anderson was aware of any alleged affirmation of fact or promise plaintiff contends constituted a warranty and that it became part of the basis of the bargain between Dr. Anderson and Lilly. *Kelleher v. Marvin Lumber*, 152 N.H. 813, 843-44, 891 A.2d 477, 502 (N.H. 2005) (citations omitted); N.H. RSA 382-A:2-313; *see also Hagenbuch v. Snap-On Tools Corp.*, 339 F. Supp. 676, 680, (D.N.H. 1972) ("In order to find an express warranty it must be shown that the representations of fact describing the hammer were made 'part of the basis of the bargain.' *In other words, plaintiff has the burden of showing that he acted on the basis of the representations.*") (emphasis supplied) (citations omitted).

As set forth above, there is no evidence that Dr. Anderson ever read, let alone made part of the basis of a bargain with Lilly, any representations or warranties whatsoever. Plaintiff does not identify in her complaint any specific warranties Lilly purportedly made to Dr. Anderson. Mrs. Glynn testified that she does not know what, if anything, Dr. Anderson referenced or consulted regarding the DES she says she took while pregnant with plaintiff Heather Moore. (SOF, ¶ 4.) Nor does she know if he is still alive. (SOF, ¶ 15.) In the absence of such evidence, plaintiff cannot prevail on her breach of express warranty claim under New Hampshire law.

To the extent that plaintiff is asserting a claim for breach of an implied warranty of fitness for a particular purpose, that claim also fails. Under New Hampshire law, reliance is

12

an essential element of such a claim. *Dalton v. Stanley Solar & Stove, Inc.*, 629 A.2d 794, 797 (N.H. 1993) ("By its terms, RSA 382-A:2-315 (1961) [New Hampshire's breach of implied warranty of fitness for a particular purpose statute] applies only if, at the time of sale, a seller knows or has reason to know of the particular purpose for which the goods are required, and that the buyer is relying on the seller's skill or judgment."). As discussed above, plaintiff cannot provide any evidence, including evidence of reliance, regarding Dr. Anderson and the alleged creation of an implied warranty. Without such evidence of reliance by Dr. Anderson, plaintiff's claim for breach of an implied warranty cannot succeed. Accordingly, Lilly is entitled to summary judgment on this claim.

    **B.**    **Plaintiff's Breach of Warranty Claims Fail as a Matter of Law Because Plaintiffs Never Provided Notice to Lilly of any Alleged Breach.**

    New Hampshire law requires a plaintiff to provide notice of any alleged breach of warranty to a seller within a reasonable time after discovery of the breach or within a reasonable time after plaintiff should have discovered the alleged breach. *Franz v. Purdue Pharma Co.*, 2006 WL 455998 *3 (D.N.H. Feb. 22, 2006) (*citing* N.H. RSA § 382-A:2-607C3)(a)).

    Plaintiff never provided Lilly notice of any alleged breach of warranty before filing this lawsuit, nor does plaintiff so claim in her Complaint. *See generally* Plaintiff's Complaint. Failure to provide Lilly such notice is fatal to plaintiff's breach of warranty claim. *Id.* ("Franz has not alleged that she gave notice of her claim to defendants prior to filing this lawsuit. Nor has she challenged defendants' reasoning as to the legal effect of failure to give notice . . . As a result, defendants' motion for summary judgment is granted as to Franz's breach of warranty claim.")

    **C.**    **Plaintiff's Breach of Warranty Claim is Barred by the Applicable Statute of Limitations.**

        The statute applicable to plaintiff's breach of warranty claim requires the action be commenced within four years after the cause of action accrued. *Gagnon v. G.D. Searle & Co.*, 889 F.2d 340, 343-44 (1st Cir. 1989) (*citing* N.H. Rev.Stat.Ann. § 382-A:2-725(1)(1961)). Further, the statute provides that "'[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach' and that '[a] breach of warranty occurs when tender of delivery is made . . . .'" *Id.* (*See also* SOF, ¶¶ 2-3.) As such, plaintiff's breach of warranty claim accrued when her mother received delivery of the prescription drug she claims to have ingested during her pregnancy with plaintiff in 1969-70 – over 35 years ago – and is now time-barred. *Id.* ("Gagnon's breach of warranty claim accrued when the [intrauterine contraceptive device] was inserted in 1978 and was time-barred when she filed suit in 1986."); *see also Thomas, supra,* 771 F.Supp. 478 at 482 ("[I]n a warranty action the limitations period normally commences to run upon tender of delivery, and it runs even though the buyer does not know the goods are defective.") (*citing Raymond v. Eli Lilly &Co.*, 412 F.Supp. 1392, 1403 (D.N.H. 1976), *aff'd*, 556 F.2d 628 (1st Cir. 1977) ("Plaintiff's last purchase of [the birth control pills] was on or about May 20, 1968, more than four years prior to the commencement of her action. She is, therefore, barred from pursuing her breach of warranty claim against defendant by NH RSA 382-A:2-725(1).") (additional citation omitted.) Lilly is entitled to summary judgment as to plaintiff's breach of warranty claim on this basis.

**IV.**    **PLAINTIFF'S MISREPRESENTATION CLAIM FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF CANNOT ESTABLISH RELIANCE, AN ESSENTIAL ELEMENT OF HER CLAIM**

        In order to prevail on her misrepresentation claim, plaintiff must prove that Dr. Anderson relied on Lilly's allegedly inadequate warnings. Reliance is an essential element of a

misrepresentation claim under New Hampshire law, whether the claim asserted is one for negligent misrepresentation or for fraudulent misrepresentation. *Alternative systems Concepts v. Synopsys, Inc.*, 374 F.3d, 23, 29-30 n. 5 (setting forth the elements of fraudulent misrepresentation); *Ingaharro v. Blanchette*, 122 N.H. 54, 57 (N.H. 1982) ("the essential elements of negligent misrepresentation are a negligent misrepresentation by the defendant of a material fact and justifiable reliance by the plaintiff.") (citation omitted.)

As set forth above, there is no evidence that Dr. Anderson ever read, heard, or relied upon any representation made by Lilly. In the absence of any evidence that Dr. Anderson relied upon any representation made by Lilly, plaintiff cannot prevail on her misrepresentation claim under New Hampshire law. Accordingly, Lilly is entitled to summary judgment as to this claim.

## CONCLUSION

For the foregoing reasons, plaintiff cannot meet her burden of proving proximate causation in this case because there is no evidence that Dr. Anderson, who plaintiff alleges prescribed DES for her mother, read and relied on anything from Lilly in allegedly deciding to prescribe DES for Mrs. Glynn. Accordingly, in the absence of admissible evidence that Dr. Anderson read and relied specifically on Lilly's warnings in prescribing DES for her mother, plaintiff cannot prove a different warning by Lilly would have prevented her alleged injuries. Moreover, for these same reasons, plaintiff cannot establish essential elements of her breach of warranty or misrepresentation claims. Further, plaintiff's breach of warranty claims are also time barred. For all of these reasons, Lilly is entitled to judgment as a matter of law.

15

Respectfully submitted,

 /s/ John C. Coots_____
Michelle R. Mangrum, D.C. Bar No. 473634
John Chadwick Coots, D.C. Bar No. 461979
Emily J. Laird, D.C. Bar No. 485890
SHOOK, HARDY & BACON, L.L.P
600 14TH Street, NW Suite 800
Washington, D.C. 20005-2004
Phone: (202) 783-8400
Fax: (202) 783-4211
and

David W. Brooks
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Phone: (816) 474-6550
Fax: (816) 421-5547

**ATTORNEYS FOR DEFENDANT
ELI LILLY AND COMPANY**

2389261v2

## CERTIFICATE OF SERVICE

        I, the undersigned, hereby certify that a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, this 30th day of July, 2007, which sent notification of such filing to all counsel of record listed below.

Aaron M. Levine
Aaron Levine & Associates
1320 19th St., N.W., Suite 500
Washington, D.C. 20036
**Attorneys for Plaintiff**


    /s/ John C. Coots_____
**ATTORNEY FOR DEFENDANT**
**ELI LILLY AND COMPANY**

17

2389261v2