UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
HEATHER ANN MOORE,                  )
                                    )
               Plaintiff,           )   CIVIL ACTION No. 06-1252 (RMU)
                                    )   Next Event: Defendant's Reply Due
      v.                            )        September 13, 2007
                                    )
ELI LILLY AND COMPANY, et al.       )
                                    )
               Defendants.          )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**PLAINTIFF'S OPPOSITION TO DEFENDANT ELI LILLY AND COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, through counsel, and opposes Defendant Eli Lilly and Company's Motion for Summary Judgment, and as grounds therefore states:

1. As Defendant has previously successfully argued, under District of Columbia choice of law, it is the place of sale of diethylstilbestrol ("DES"), not the place of ingestion, that governs applicable law. Regardless, none of the jurisdictions implicated by this case – Maryland, Massachusetts, or New Hampshire – require that a plaintiff affirmatively prove the particulars of what a doctor would have relied upon if the plaintiff can provide evidence that a different warning would have more likely than not reached the doctor.

2. Defendant's complete failure to test DES for safety and efficacy, both prior to and after marketing it to the public, is a separate cause of action from its failure to warn and the prescribing doctor's knowledge is irrelevant to that count.

3. Massachusetts law governs Plaintiff's warranty claims, and Massachusetts tolls breach of warranty until discovery and does not require notice.

WHEREFORE, for the aforementioned reasons, the reasons contained in the attached Memorandum of Points and Authorities, and for good cause shown, Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,

AARON M. LEVINE AND ASSOCIATES


_____/s/ Aaron M. Levine_____
Aaron M. Levine, #7864
1320 Nineteenth Street, N.W., Suite 500
Washington, D.C. 20036
(202) 833-8040

COUNSEL FOR PLAINTIFF

## LCvR 7(f) REQUEST FOR ORAL ARGUMENT

Under District of Columbia choice of law principles, each claim must be separately evaluated as to whether the law of the District of Columbia, Maryland, Massachusetts, or New Hampshire apply.  There is therefore the possibility that multiple foreign laws will apply to different aspects of this claim.  Plaintiff believes that oral argument will significantly aid the decisional process.  Therefore, Plaintiff respectfully requests an oral argument on this motion.

_____/s/ Aaron M. Levine_____
Aaron M. Levine

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
HEATHER ANN MOORE,                  )
                                    )
                    Plaintiff,      )   CIVIL ACTION No. 06-1252 (RMU)
                                    )   Next Event: Defendant's Reply Due
        v.                          )         September 13, 2007
                                    )
ELI LILLY AND COMPANY, et al.       )
                                    )
                    Defendants.     )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
HER OPPOSITION TO DEFENDANT ELI LILLY AND COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

I.    INTRODUCTION

The primary thrust of Defendant Eli Lilly and Company's ("Defendant" or "Lilly") motion is an intellectual slight of hand.  A number of the consituent claims in the present case regard Lilly's failure to warn doctors that the prescription of diethylstilbestrol ("DES") to pregnant mothers would cause injury to the daughters exposed *in utero*, and that DES had never been adequately tested.  Lilly does not contest in this motion that its warnings were adequate, nor can it.[1]  Lilly also does not argue at summary judgment that it adequately tested DES. Instead, Lilly claims that Plaintiff must prove that Dr. Carl Anderson, the doctor who prescribed DES to Plaintiff's mother, would have read a warning that, by Lilly's own admission, did not exist.

The law in all the states implicated by this litigation agree that a reasonable doctor keeping himself abreast of the literature would encounter a warning had one been given. Ignoring an adequate warning, either directly or through a failure to keep up with the literature,

_____

[1] Lilly also admits for the purpose of summary judgment that Plaintiff was exposed to DES and was exposed to Lilly's DES.  See Def's Mem. at 2 n. 1.

1

is essentially malpractice. It is not Plaintiff's duty to prove that Dr. Anderson was a responsible physician; it is Defendant's burden to prove the opposite.

Furthermore, Lilly's negligence was not only failure to warn, but a failure to test. From its interrogatory answers, Lilly demonstrated that it conducted no tests to determine the safety of DES for use in pregnancy. See Defendant's Answers to Interrogatories, pgs. 12-13, App. 1. Had Lilly adequately tested, its drug would not have ever been sold for use in pregnancy, so Dr. Anderson would have been unable to prescribe it regardless of his level of education.

DES, a mid-20th century fertility nostrum, has been banned by the Food and Drug Administration, recalled by the manufacturers and branded a carcinogen and teratogen by the World Health Organization, the National Institutes of Health (NIH), the American College of Obstetrics and Gynecology, and every health organization devoted to reproductive medicine. It should never have been prescribed to pregnant women. See Cynthia Orenberg, DES: The Complete Story, (St. Martin Press 1981); Barbara Seaman, The Greatest Experiment Ever Performed On Women, (Hyperion Press 2003); Stephen Fenichell and Lawrence S Charfoos, Daughters At Risk: A Personal DES Story, (Doubleday 1981).

The drug was prescribed continuously for twenty years to millions of pregnant women as a universal remedy to produce plump and healthy babies even though it never worked.[2] See W.J. Dieckmann, M.D., et al., Does the Administration of Diethylstilbestrol During Pregnancy Have Therapeutic Value?, 66 Amer. J. of Ob. and Gyn. 1062, 1074 (1953) attached at App. 2. Lilly failed to conduct a single test to investigate the DES effect on the forming female daughter even though it knew since the 1940s of reports in the literature that estrogen and DES in high doses

_____

[2] In 1968 the National Academy of Sciences in its review of the effectiveness of DES for the purpose of preventing threatened or habitual abortion found that effectiveness cannot be demonstrated by the literature or its own experience. See Hearing Before the Subcommittee on Government Operations 92nd Congress Nov 11, 1971, pg. 77. At this time Lilly was asked by the F.D.A. to provide evidence that DES was effective and failed to provide any such information.

stunted the reproductive organs of the exposed daughter in animals. See Robert K. Enders, Mink

Production in Relation to Stilbestrol, 16:7 The Fur Journal 4, 10 (1950) App. 3.

Had Lilly performed the most rudimentary of testing on DES in humans or animals prior

to marketing DES for use in pregnancy it would have discovered that the drug caused

malformation, cancer, sterility and a plethora of reproductive tract malformations to the exposed

daughter. See Roberta J. Apfel, M.D., M.P.H. & Susan M. Gedaro, M.D., To Do No Harm,

DES and the Dilemmas of Modern Medicine (Yale University Press 1984); Orenberg, supra; and

Aaron Levine, Identification of Manufacturer of DES, 46 Proof of Facts 108 (1986).

## II.    PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND COUNTERSTATEMENT OF MATERIAL FACTS

A.    Response to Defendant's Statement of Uncontroverted Material Facts

1-3.    Admitted.

4.    Denied as misleading.  Lilly does not contest in this motion for summary

judgment that its warnings to Dr. Anderson were adequate, just that Dr. Anderson would not

have read them.  Therefore, Mrs. Glynn's lack of knowledge to what Dr. Anderson did read has

little bearing on what Dr. Anderson might have read had it been available.  Furthermore, Mrs.

Glynn is not the necessary or even an appropriate source for this information.

5.    Denied as misleading.  As Defendant establishes later on in its own statement of

uncontroverted facts, Dr. Anderson provided Plaintiff's mother with a "stilbestrol schedule"

showing a dosage regimen for DES.  See Def's Mem. at 4; see also Stilbestrol Schedule, as App.

4.  Regardless of what Plaintiff's mother remembers Dr. Anderson telling her, Defendant admits

that he provided her with a schedule for taking DES on an ever-increasing dosage schedule.

This dosage schedule matches, from the seventh to the thirty-fifth week, the DES dosage

schedule suggested by Lilly in several printings of the <u>Physician's Desk Reference</u>.  <u>See</u>, <u>e.g.</u> 1959 <u>Physician's Desk Reference</u>, pg. 699, App. 17.

6.     Denied as misleading.  Defendant has not challenged Plaintiff's exposure to DES, or any particular brand of DES, on this Motion for Summary Judgment.  <u>See</u> Def's Mem. at 2 n. 1.  Defendant states in its motion that the specific grounds for this motion are solely "because plaintiff cannot meet her burden of proving proximate causation in this case because there is no evidence that Dr. Anderson, who plaintiff alleges prescribed DES for her mother, read and relied on anything from Lilly."  Def's Mtn. at 1.  This fact bears only on whether or not Lilly can be identified as the manufacturer of the DES that injured Plaintiff.  As Lilly does not contest identification on this motion for summary judgment, this fact proves nothing.

7.     Admitted.

8.     Denied as irrelevant and confusing.  Defendant has not challenged Plaintiff's exposure to DES, or any particular brand of DES, on this Motion for Summary Judgment.  <u>See</u> Def's Mem. at 2 n. 1.  Defendant states in its motion that the specific grounds for this motion are solely "because plaintiff cannot meet her burden of proving proximate causation in this case because there is no evidence that Dr. Anderson, who plaintiff alleges prescribed DES for her mother, read and relied on anything from Lilly."  Def's Mtn. at 1.  This fact bears only on whether or not Lilly can be identified as the manufacturer of the DES that injured Plaintiff.  As Lilly does not contest identification on this motion for summary judgment, this fact proves nothing.

9.     Denied as irrelevant.  Defendant has not challenged Plaintiff's exposure to DES, or any particular brand of DES, on this Motion for Summary Judgment.  <u>See</u> Def's Mem. at 2 n. 1.  The relevant law is clear that only the manufacturer of the DES ingested is liable for the

defects in its product, including its warnings; therefore, the quantity of DES manufacturers during the time of Plaintiff's gestation is irrelevant and misleading.

10-12. Admitted.

13.    Denied as misleading.  Defendant has not challenged Plaintiff's exposure to DES, or any particular brand of DES, on this Motion for Summary Judgment.  See Def's Mem. at 2 n. 1.  Defendant states in its motion that the specific grounds for this motion are solely "because plaintiff cannot meet her burden of proving proximate causation in this case because there is no evidence that Dr. Anderson, who plaintiff alleges prescribed DES for her mother, read and relied on anything from Lilly."  Def's Mtn. at 1.  This fact, with its emphasis on pharmacy records, bears only on whether or not Lilly can be identified as the manufacturer of the DES that injured Plaintiff.  As Lilly does not contest identification on this motion for summary judgment, this fact proves nothing.

14.    Admitted.

B.    Plaintiff's Counterstatement of Material Facts

15.    Diethylstilbestrol was an ineffective, untested, teratogenic, a carcinogen, and should never have been promoted for use by pregnant women.  A reasonable and prudent drug manufacturer would have known and warned of its dangers and taken it off the market by 1953.  The warnings given to the medical community were insufficient.  See Falk Statement, ¶2, ¶3, and ¶6, App. 5.

16.    Lilly never warned of the DES risk of malformation to the offspring even though there were reports in the literature.   See R.R. Greene, et. al., "Experimental Intersexuality: The Paradoxical Effects of Estrogens on the Sexual Development of the Female Rat," in The Anatomical Record (Edward A. Boyden, ed. 1939), as App. 6.

17.    Lilly was the *only* company listing for "diethylstilbestrol" in the 1969 <u>Physicians'</u> <u>Desk Reference</u> ("<u>PDR</u>") index.  <u>See</u> 1969 <u>PDR</u>, pg. 224, App. 7.  All the other companies listed only have brand name products.  No company other than Lilly was listed in the <u>PDR</u> as selling or recommending DES.  The <u>PDR</u> was and is a preeminent reference among physicians for information regarding pharmaceuticals.

15.    DES is a banned drug; it never would have received approval from the Food and Drug Administration if proper testing and warning had been done.  <u>See</u> Falk Statement, ¶ 11, App. 5.

16.    The pharmacy that sold DES to Plaintiff Heather Moore's mother only stocked Eli Lilly's brand of DES.  <u>See</u> Deposition of Joyce Glynn, pg. 40, App. 8; Deposition of Philip Cavaretta, pgs. 3, 31-32, App. 9.

17.    DES labeling was industry-wide.  Lilly's New Drug Application with the FDA for DES was adopted at their request by the entire industry.  DES manufacturers formed a Committee led by Lilly's submission for the approval of DES use in pregnant women.  <u>See</u> Letter from Dr. Hines (Lilly) to Dr. Morrell (Squibb), dated May 13, 1941, App. 10.

18.    DES was recommended and promoted by Lilly in its informational literature, which was unchanged in 1969.  <u>See</u> Lilly A-Form, pgs. 21-24, App. 11.

## III.    STANDARD ON SUMMARY JUDGMENT

The Court must view the law and the facts in a light most favorable to the Plaintiff.  If the evidence presented raises more than the "slightest doubt," is more than "utterly implausible," presents more than a "mere scintilla" or contains more than a "metaphysical doubt," the nonmovant is entitled to go to trial.  <u>See</u> Edward J. Brunet, et al., <u>Summary Judgment Federal</u> <u>Law and Practice</u> 97-122 (2d ed. 2000).  In order to prevail, Lilly must present to the court facts

that preclude the possibility that a reasonable juror could find in favor of the plaintiff.  The DES

case of Shields v. Eli Lilly and Co., which centered on the sufficiency of proof in opposing

summary judgment, sets the bar:

> In a world short of absolutes, the jury is called upon to process less than perfect
> evidence.  Litigants may not offer speculations or slight possibilities in support of
> their claims; but neither are they limited to offering only the incontrovertible.
> The jury's function contemplates that evidence may be less than indubitable . . . .
> Every conceivable alternative theory of causation need not be extirpated by a
> litigant seeking the jury's decision.

Shields v. Eli Lilly and Co., 895 F.2d 1463, 1467 (D.C. Cir. 1990).  Similarly:

> Summary judgment should be granted only when the court, viewing the evidence
> in the light most favorable to the non-moving party, determines that no genuine
> issue of material fact exists . . . . Facts are 'material' if they possess 'the capacity
> to sway the outcome of litigation under the applicable law.'

Great Northern Ins. Co. v. Paino Assoc's, 364 F. Supp. 2d 7 (D. Mass. 2005).

> In examining the sufficiency of affidavits filed in connection with the motion, the
> affidavits of the moving party are strictly construed and those of his opponent
> liberally construed, and doubts as to the propriety of granting the motion should
> be resolved in favor of the party opposing the motion.

D'Amico v. Board of Medical Examiners, 520 P.2d 10 (Cal. 1974).

> The "significantly probative" test does not require the nonmoving party to
> discredit every conceivable alternative theory of causation.  As this court noted in
> Elliott v. Michael James, Inc., 165 U.S. App. D.C. 356, 507 F.2d 1179 (D.C. Cir.
> 1974), "there is no requirement that the circumstances, to justify the inferences
> sought, negative every other positive or possible conclusion."  To be significantly
> probative, evidence need only be sufficient to permit a reasonable juror, indulging
> all possible inferences, to find that the party proved the element at issue.

Shields, 895 F.2d at 1465.

Plaintiffs are entitled to every favorable inference.  They are entitled to knit together the

various pieces of evidence to construct a web of information and evidence.

> It is enough if the item could reasonably show that a fact is slightly more probable
> than it would appear without that evidence.  Even after the probative force of the
> evidence is spent, the proposition for which it is offered still can seem quite
> improbable.  Thus, the common object that the inference for which the fact is

offered 'does not necessarily follow' is untenable.  It poses a standard of conclusiveness that very few single items of circumstantial evidence could ever meet.  A brick is not a wall.

Edward W. Cleary, et al., McCormick on Evidence § 185, at 542-43 (3d ed. 1984).

At this stage of the proceedings, negligence in failure to warn, proof of exposure, proof of product identification, and proof that DES is a defective and dangerous drug are presumed as Defendant's sole argument regards the standard of evidence needed to invoke the heeding presumption.

## IV.    ARGUMENT

A.    District of Columbia Choice of Law Would Apply Massachusetts Law to Plaintiffs' Claims

Plaintiff agrees with Defendant that District of Columbia choice of law applies to this action.  However, as a preliminary matter, the District of Columbia choice of law analysis is not unitary.  Different choice of law may apply to each issue in a lawsuit.  See Jaffee v. Pallotta Teamworks, 374 F.3d 1223, 1227 (D.C. Cir. 2004).  The court must perform an interest analysis for each claim separately.  Hercules & Co. v. Shama Restaurant Corp., 566 A.2d 31, 41 (D.C. 1989).  Each particular claim – negligence, strict liability, and breach of warranty – must be evaluated separately.  It should also be noted that Plaintiff's current residence is Maryland, and therefore Maryland has a potential interest in applying its law to the issues this case, although likely not an overriding concern.

Still, regarding each of Plaintiff's claims, the most important factor is that the negligence or the breach took place in Massachusetts.  Plaintiff agrees that the learned intermediary rule applies to this case; the doctor who prescribed DES to Plaintiff's mother did so in Massachusetts.  See Plaintiff's Answers to Interrogatories, attached as Exhibit 1 to Def's Mem., pg. 3.  With regard to any warranties or representations, the DES was purchased in

Massachusetts.  See Plaintiff's Answers to Interrogatories, Exh. 1 to Def's Mem., pg. 6.  Plaintiff was born in Massachusetts.  See id., pg. 2.  The operative acts to engage Plaintiff's claims – the acts or omissions of Defendant such as failure to warn and the sale of a defective drug – occurred in Massachusetts.

Defendant contends that courts apply the place of ingestion of DES, not the place of purchase.  Ironically, Defendant argued the opposite in another recent DES case and prevailed.  In Lagor v. Eli Lilly and Co., No. 06-1967, 2007 U.S. Dist. LEXIS 43703 (D.D.C. June 18, 2007), the plaintiffs lived in Massachusetts, but the birth of the plaintiffs and the prescription and purchase of DES took place in Rhode Island.  The court, finding for Defendant's argument that Rhode Island law would likely apply, found that "Rhode Island has the most significant relationship to the parties' dispute" as the "mere fortuity that ingestion of the drug . . . occurred in Massachusetts does not negate the fact that most of the operative events giving rise to the plaintiffs' injuries transpired in Rhode Island."  2007 U.S. Dist. LEXIS 43703 at *15-16.  As found in Long v. Sears Roebuck & Co., 877 F. Supp. 8 (D.D.C. 1995), under District of Columbia choice of law, the place of the failure to warn and the place of purchase, even if not the place of use, governs claims for defective products.  See id. at 12.

Here, Plaintiff's mother lived in New Hampshire, but sought medical treatment, bought DES, and gave birth to Plaintiff in Massachusetts.  All of the Massachusetts actions implicate the conduct giving rise to the injury more than the act of carrying a child primarily but not exclusively in New Hampshire.

B.    Evidence of Dr. Anderson's Knowledge Is Not Necessary To Show the Inadequacy of Lilly's Warning

Lilly has lost summary judgment time and time again on its argument that Plaintiff cannot prove a physician read its literature.  See Minute Order in Casale v. Eli Lilly and Co.,

C.A. 1:03-cv-11833-DPW (D. Mass. Mar. 23, 2004), as App. 12; <u>Miskulin v. Eli Lilly and Co.</u>, No. 418517 (Cal. Sup. Ct. Oct. 25, 2005), as App. 13; <u>Hansch v. Eli Lilly and Co.</u>, No. 04-00122 (N.D. Cal. 2005), as App. 14; and <u>Baughn v. Eli Lilly and Co.</u>, 356 F. Supp. 2d 1177 (D. Kan. 2005). It was Defendant's responsibility to ensure that its product was not used by pregnant women. Defendant's claim that it was one of many manufacturers with many warnings does not, under either Massachusetts or New Hampshire law, increase Plaintiff's burden of proximate cause; instead, it shows that Defendant marketed DES in a situation where its warnings may have likely been ignored. By claiming that it is more likely than not that a doctor would not have read Lilly's warning, Lilly is conceding that it made no reasonable efforts to inform the medical community of the dangers of DES.

Although Defendant points to the fact that DES was a "generic" drug, and each manufacturer had its own warnings as required by federal law, only the manufacturer whose drugs were consumed will be held responsible. The appellate decision illustrating this principle is <u>Foster v. American Home Products</u>, 29 F.3d 165 (4th Cir. 1994). In <u>Foster</u>, a doctor prescribed the brand name drug Phenergan; however, the prescription was filled with Phenergan's generic equivalent. 29 F.3d at 167. There was no question that the generic manufacturer had done nothing more than copy all of the brand name manufacturer's warnings. <u>Id</u>. at 169. The Fourth Circuit held that the brand name had no duty to individuals who were not injured by its product. <u>Id</u>. at 171. All the courts that have considered <u>Foster</u> have adopted its holding. <u>See</u>, <u>e.g.</u>, <u>Colacicco v. Apotex, Inc.</u>, 432 F. Supp. 2d 514, 519 n. 2, 543 (E.D. Pa. 2006) (no evidence as to whether brand name or generic Paxil prescribed, but generic manufacturer still liable because that is the drug patient took); <u>Block v. Wyeth, Inc.</u>, No. 3:02-CV-1077-N,

2003 U.S. Dist. LEXIS 1169 at *6-7 (N.D. Tex. 2003); Sharp v. Leichus, 952 So. 2d 555 (Fla. Dist. Ct. App. 1907)

Defendant has taken advantage of the law as stated by Foster to avoid liability for generic versions of its drugs. In Goldych v. Eli Lilly and Co., No. 5:04-CV-1477, 2006 U.S. Dist. LEXIS 49616 (N.D.N.Y. July 19, 2006), Lilly successfully argued that, even though it was the developer of all research and warnings regarding Prozac, it was not responsible for failing to warn when injuries are caused by a generic version of the drug. Id. at *16. As stated by the court in Goldych, "a generic manufacturer is responsible for the accuracy of labels placed on its products." Id. As the manufacturer of the generic drug in this case, Lilly is responsible for the failure of its product to carry an adequate warning.

Although New Hampshire has not yet expressly adopted Foster, Foster has been adopted by Massachusetts courts. In Kelly v. Wyeth, No. MICV2003-03314-B, 2005 Mass. Super. LEXIS 688 (Mass. Super. May 17, 2005), a doctor prescribed Reglan for the plaintiff, but the plaintiff's pharmacist filled her prescription with generic metoclopramide made by another company. 2005 Mass. Super. LEXIS 688 at *3. Citing Foster, the Massachusetts Superior Court held that even though Wyeth could be considered the source of information regarding Reglan, it is the duty of the particular drug manufacturer to warn regarding its product. Id. at *10-11. Summary judgment was later denied for the generic manufacturer in the same case. See Kelly v. Wyeth, Opinion No. 97845, 2007 Mass. Super. LEXIS 136 at *18-19 (Mass. Super. Apr. 12, 2007) (finding a question of fact regarding plaintiff's failure to warn claim against Teva Pharmaceuticals). It does not matter in Massachusetts that the doctor relied on the warnings of a drug other than that prescribed.

### 1)    Massachusetts Law

It is generally accepted under Massachusetts law that, in prescription drug cases, warnings must be given to the prescribing physician as the "learned intermediary." MacDonald v. Ortho Pharmaceutical Corp., 475 N.E.2d 65, 69 (Mass. 1985). In applying the learned intermediary rule to prescription drug cases, a presumption is created in the absence of an adequate warning:

> Comment j to Section 402 A (Restatement of Torts 2d 353) establishes a presumption that an adequate warning, if given, will be read and heeded. In such a situation, the presumption established works to the benefit of the manufacturer. However, where no warning is given, or where an inadequate warning is given, a rebuttable presumption arises, beneficial to the plaintiff, that the failure to adequately warn was a proximate cause of plaintiff's ingestion of the drug. This presumption, absent the production of rebutting evidence by the defendant, is sufficient to satisfy the first branch of the plaintiff's proximate cause burden.

Knowlton v. Deseret Medical, Inc., 930 F.2d 116, 123 (1st Cir. 1991) (applying Massachusetts law). "The failure to give such a warning therefore permits the inference that it would have alerted the user to the danger and forestalled the accident." Wolfe v. Ford Motor Co., 376 N.E.2d 143, 147 (Mass. App. Ct. 1978).

Lilly argues that Plaintiff must prove that Dr. Anderson read and relied on Lilly's literature in order to prove causation. If Plaintiff cannot expressly show such a link, Defendant argues, it is entitled to summary judgment. This issue was first argued almost thirty years ago in Ferrigno v. Eli Lilly and Co., 420 A.2d 1305 (N.J. Super. 1980), where "defendants have argued that if a warning is deemed to be inadequate, it shall be part of plaintiff's burden to establish that the doctor in fact relied on the warning given" and the court held that, "[i]n the absence of proof that a physician did not rely on the warnings, it will be presumed that he did." Ferrigno, 420 A.2d at 1322. Similarly, The Eighth Circuit found in a non-DES pharmaceutical failure to warn case that "failure to produce testimony of the prescribing doctors was not fatal" to the case if

adequate warnings are presumed heeded.  <u>DeLuryea v. Winthrop Lab's</u>, 697 F.2d 222, 225 (8th Cir. 1983).

The Maryland Court of Appeals was more explicit.  In <u>Eagle-Picher Indus. v. Balbos</u>, 604 A.2d 445 (Md. 1992), an asbestos case, defendants alleged that they were entitled to summary judgment because plaintiffs presented "(1) no evidence that warnings would have reached the decedents; and (2) no evidence that the decedents would have heeded any warnings."  <u>Id</u>. at 468. Even without direct evidence that a warning would have reached the plaintiffs and changed their behavior, the Court of Appeals of Maryland found that "[a]n apparent majority of courts give plaintiffs the benefit of a presumption that they would have read and heeded a legally adequate warning," and therefore "direct evidence that plaintiffs' decedents would have heeded adequate warnings was not an essential element of the plaintiffs' case" and plaintiffs could go to a jury. <u>Id</u>. at 469.   Here, Defendant makes essentially the same argument, and it should be rejected again.  It is simply not necessary for Plaintiff to prove anything other than the inadequacy of the warning for the heeding presumption to apply.

As another federal court found when interpreting Massachusetts law in a DES case, the heeding presumption is litigated in a four-step process:

> (1) the plaintiff carries the initial burden of producing sufficient evidence that the defendant manufacturer failed to warn of a non-obvious risk about which the manufacturer knew or should have known . . . (2) assuming the plaintiff raises a triable issue on this question, a rebuttable presumption arises that the physician would have heeded an adequate warning . . . (3) defendant must then come forward with sufficient evidence to rebut the presumption . . . and (4) once the presumption is rebutted, plaintiff must produce sufficient evidence to create a triable issue on the question of causation.

<u>Kelley v. Eli Lilly and Co.</u>, 05-1882 at 9-10 (D.D.C. Apr. 27, 2007), attached as App. 15. Plaintiff is entitled to the presumption that Dr. Anderson would have heeded an adequate

warning had Lilly given one.  Lilly has presented no evidence to the contrary, much less any direct evidence that Dr. Anderson did not read or rely on manufacturer warnings.

Under Massachusetts law, it is "incumbent on the defendant, not plaintiff, to prove that [the prescribing doctor] would not have followed an adequate warning."  Knowlton v. Deseret Medical, Inc., 930 F.2d 116, 123 (1st Cir. 1991).  This requires an affirmative proffer of fact on the part of Defendant.  Instead, Defendant asks the court to find, without evidence, that Dr. Anderson would have departed from the standard of care by: 1) prescribing DES even without promotion by Lilly, a major drug company; or 2) ignored published warnings; 3) intentionally refused to advise Plaintiff's mother of published risks, and 4) that Dr. Anderson's prescription of DES was without reliance on an existing manufacturer.  Lilly provides no substantiation, by way of affidavit or deposition, to support any of these assertions.  Affirmative evidence is necessary; as the court in Knowlton noted, a doctor's ignorance of a warning would amount to malpractice, and malpractice on the part of a doctor should not be assumed.  930 F.2d at 123.

Under Massachusetts law, a rebuttal of the heeding presumption must show that, had the doctor known of the risks, he would have actively ignored them.  See Garside v. Osco Drug, Inc., 976 F.2d 77, 81 (1st Cir. 1992) (doctor's own statement that doctor would have ignored a warning held insufficient as defendant must show that doctor actually knew of the risk and ignored it absent the warning).  The rebuttal evidence must show "a warning would not reduce the likelihood of injury."  Colter v. Barber-Greene Co., 525 N.E.2d 1305, 1312 (Mass. 1988) (admission that plaintiff knew of danger when he cleaned gears of still-moving industrial machine).

The evidence must be so overwhelming that a jury cannot find that the doctor would have changed his behavior.  See Knowlton v. Deseret Medical, Inc., 930 F.2d 116, 120 (1st Cir. 1991)

(finding that, where a surgeon opined that he would continue to use catheters in a manner that caused damage, a manufacturer could still be held liable because a jury could reasonably have found that the surgeon, if a warning had been given, would not have used a catheter in that manner); Cf. Seley v. G.D. Searle & Co., 423 N.E.2d 831, 838 (Ohio 1981) (finding that defendants provided sufficient evidence to rebut the heeding presumption where the demonstrated that plaintiff had not disclosed her condition to physician so he could not warn her of the dangers of taking the drug in her condition). Even if a doctor could be considered an intervening cause, when a pharmaceutical manufacturer's failure to warn contributes to the doctor's negligent prescription, the manufacturer remains liable. See Brochu v. Ortho Pharmaceutical Corp., 642 F.2d 652 (1st Cir. 1981); McCue v. Norwich Pharmacal Co., 453 F.2d 1033, 1035 (1st Cir. 1972) (heeding presumption applied even though doctor let patient take drug for two years without further follow-up); Sterling Drug, Inc., v. Yarrow, 408 F.2d 978, 994 (8th Cir. 1969) ("The trial court properly concluded that any failure of the appellee's physician to learn of warnings from sources other than appellant did not relieve appellant of liability"); Sterling Drug, Inc. v. Cornish, 370 F.2d 82, 85 (8th Cir. 1966).

In fact, when a defendant has presented evidence of a doctor's actual ignorance of any warning, in Massachusetts the presumption remains when a doctor has not personally read the warning. In Linnen v. A.H. Robins Co., 11 Mass. L. Rep. 231, 1999 Mass. Super. LEXIS 552 (Mass. Super. Ct. Dec. 7, 1999), the defendant tried to rebut the heeding presumption by showing that the doctor who prescribed the defendant's drug had never read the PDR or other warnings for the drug. 1999 Mass. Super. LEXIS 552 at *11-12. However, since there was evidence that the doctor did speak to other doctors about the drug, it was a question for the jury as to whether a proper warning would reach him. Id. at *12. As long as there is a question of

fact as to whether the doctor was responsible enough to stay abreast of any warnings, a warning can be presumed heeded.

Massachusetts is generous with the heeding presumption, requiring a rebuttal to be proof to the exclusion of any doubt that a doctor would have ignored a warning if it was given. Lilly has not provided this proof. The only way to rebut the heeding presumption to provide evidence that the doctor would have ignored the warning or relied exclusively on another source of information.

Hibbs v. Abbott Lab's, 814 P.2d 1186 (Wash Ct. App. 1891) is the only reported appellate decision that addresses the heeding presumption as it pertains to DES injuries. In Hibbs, the prescribing obstetrician testified that he prescribed DES based on his own observations and did not rely on any drug manufacturer's product literature. Id. at 1187. Therefore, the defendants argued that any failure to warn on their part was irrelevant. Id. at 1188.

Even after the doctor's testimony, the Hibbs Court rejected the drug company's arguments and reversed summary judgment for the defendant drug manufacturer. The Court held:

> Here, Dr. Rutherford's testimony was only that he did not rely on Kirkman or any other pharmaceutical company's promotions literature. He prescribed DES because of what he knew about the drug from his own vast experience and other doctors' work. Based on these statements, Kirkman would have us conclude that if the drug companies had researched DES, as Drs. Lynch and Stillman claim they should have, and warned about not only the drug's lack of efficacy in the prevention of spontaneous abortions, but also the drug's significant dangers when ingested during pregnancy, Dr. Rutherford would have nevertheless ignored those warnings.

> Kirkman's argument is flawed. Dr. Rutherford's reliance on his own knowledge of DES in deciding to prescribe the drug to Bernadine Raymond has no bearing on whether he would have heeded warnings, had any been given, that the drug posed serious risks to the unborn children of pregnant women. Dr. Rutherford was simply never asked this question.

Id. at 1188.

In a DES case out of Boston, Casale v. Eli Lilly and Co., C.A. 1:03-cv-11833-DPW (D. Mass. Mar. 23, 2004), Lilly filed a motion for summary judgment on the issue of heeding. The District Court in that case made a preliminary ruling, prior to settlement, stating: "Court considers the case a failure to warn case and takes the summary judgment issues under advisement but has indicated an inclination to deny the motion." See Selected Pages from Defendant's Memorandum and Minute Order, App. 12.

### 2)    New Hampshire Law

Although the First Circuit has found that "New Hampshire has not adopted the 'read and heed' presumption," see Wilson v. Bradlee's of New England, Inc., 250 F.3d 10, 16 (1st Cir. 2001), the First Circuit, interpreting New Hampshire law, has also held that "having put a dangerous drug on the market without adequate warning[,] defendant cannot be heard to say that the physician might have disregarded a proper one." See McCue v. Norwich Pharmacal Co., 453 F.2d 1033, 1035 (1st Cir. 1972).

The ruling in McCue is consistent with the New Hampshire Supreme Court's holding in Thibault v. Sears, Roebuck & Co., 395 A.2d 843 (N.H. 1978), where it found that "a failure to read or follow instructions for product use may not be fatal to the plaintiff's case if he can show that such failure was reasonably foreseeable." Id. at 847. Evidence, therefore, of particular attention to the warning is not necessary if inattention would have been foreseeable. Even when the warning was directed to a third party, "[an] expert's inability to determine whether [the third party] would have heeded an adequate warning . . . does not entitle defendant to summary judgment." Gilson v. Grapek Co., No. 03-CV-478-SM, 2005 U.S. Dist. LEXIS 12182, *5-6 (D.N.H. 2005). As long as there was evidence that an adequate warning would have been

effective – that someone, generally, would have read the warning – the issue may go to a jury. Id. at *6.

Nelson v. Dalkon Shield Claimants Trust, No. 84-276-SD, 1994 WL 255392 (D.N.H. June 8, 1994), cited by Defendant, supports the proposition that Plaintiff need only show that an adequate warning would have changed physicians' behavior generally. According to the District Court in Nelson, the testimony of a former A.H. Robins employee was sufficient to show that the defendant failed to warn. Id. at *5. However, in Nelson, the District Court found proximate cause without citation to any evidence that the doctor at issue would rely on any particular source of information. Instead, the entire argument involving proximate causation rested on whether or not the doctor had already given a sufficient warning to the plaintiff. Id. at *5-6. Without any evidence but the plaintiff's testimony that she was inadequately warned, the Nelson court found that a reasonable jury could find that an adequate warning would have changed this particular doctor's conduct. Id. at *6.

"Whether a manufacturer or distributor of DES should have foreseen it would be used for preventing miscarriages is a question of fact for the jury." Medics Pharm. Corp. v. Newman, 378 S.E.2d 487, 488 (Ga. Ct. App. 1889). For two decades starting in the early 1950's, Lilly recommended DES to the medical community to treat conditions in pregnant women without any warnings of serious and permanent injury to the fetus or contraindications for pregnancy, See 1954 PDR, page 467, App. 16; 1959 PDR, page 699, App. 17; 1964 PDR, page 693, App. 18. In 1951, Eli Lilly's publication De Re Medica advertised DES as the most effective drug to prevent miscarriage. See De Re Medica, pg. 211, App. 19. Lilly promoted DES for use as a miscarriage preventative in its official A Form; that language was never withdrawn. See Lilly A Form, pg. 22-24, App. 11.

Defendant was in a dominant position to inform doctors of the dangerousness of DES; Lilly had multiple avenues of publication and influence in the pharmaceutical community. The argument that Lilly's warning would not be received by a doctor is ludicrous. DES labeling was standardized upon Lilly's request. Lilly's industry committee recommended that no additional warnings be added to DES when prescribed to pregnant women. See Letter from Dr. Hines to Dr. Morrell, App. 10. It is therefore inaccurate to say that there were many sources about DES independent of Eli Lilly and Company.

In the 1969 entry for DES, Lilly is the *only* manufacturer to appear with the text of their labeling. See 1969 PDR, App. 7, pg. 224. The Ninth Circuit found that the availability of a warning in the PDR creates a question of fact as to the sufficiency of a warning even when there is evidence that the warning was not the cause of the injury. See Dalke v. Upjohn Co., 555 F.2d 245, 249 (9th Cir. 1977). Lilly provided the most common source of information about DES – the PDR entry – and so should not be able to claim that there is an overwhelming possibility that doctors looked elsewhere for their warnings. Lilly also failed to update many of its other sources of DES information available, such as its A Form.

C.    Plaintiff Also Alleges Failure to Adequately Test, Which Does Not Require Dr. Anderson's Knowledge as Greater Testing Would Have Kept DES Out of the Stream of Commerce Regardless of Dr. Anderson

Separate from its failure to warn, Lilly was negligent from day one in placing DES on the market for use by pregnant women without any testing or warning whatsoever. Had Lilly performed appropriate testing on DES in humans or animals prior to marketing DES for use in pregnancy, it would have discovered that the drug caused malformation, cancer, sterility, and a plethora of reproductive tract malformations in the exposed daughter, as well as that DES did not work for the prevention of miscarriage. See Greene et. al., App. 6. DES never should have made it to the market. See Roberta J. Apfel, M.D., M.P.H. & Susan M. Gedaro, M.D., To Do No

Harm, DES and the Dilemmas of Modern Medicine (Yale University Press 1984); Cynthia

Orenberg, DES: The Complete Story (St. Martin's Press 1981); and Aaron M. Levine,

Identification of Manufacturer of Diethylstilbestrol (DES), in 46 Am. Jur. Proof of Facts 2d 59

(Christian C. Bjorkland ed., 1986).

 Plaintiff's OB/GYN expert, Dr. Falk, will testify that Defendant failed to test and warn of

the dangers of DES, that Defendant knew or should have known that DES was an unreasonably

dangerous drug, and that, had an adequate warning been given, DES would not have been

prescribed to pregnant women in the ordinary course of OB/GYN practice.  See Falk Statement,

¶2-8, App. 5.  Had Defendant shared what it knew and should have known about DES, a

reproductive tract-mutating teratogen to a developing fetus, with the medical community, no

doctor would have prescribed this drug to a pregnant woman and the Food and Drug

Administration would not have approved it.  See Dieckmann, App. 1; Enders, et al., App. 2.

Whether or not Dr. Anderson received a Lilly warning, Defendant is still liable.

D. Plaintiff's Claim of Breach of Implied Warranty Survives

 Plaintiff concedes that, under District of Columbia statute of limitations, a claim

sounding solely in contract for the sale of goods runs from sale and would be barred.  See Hull v.

Eaton Corp., 825 F.2d 448, 456-57 (D.C. Cir. 1987) (applying D.C. statute of limitations for

foreign breach of warranty, which runs from sale).  However, if Massachusetts substantive law

applies, it would be more appropriate for the District to apply its tort statute of limitations, rather

than the statute of limitations under the Uniform Commerical Code, in order to match statute of

limitations with substantive law.

 Under Massachusetts law, a claim of breach of implied warranty is the equivalent of a

strict liability tort claim, and not a claim for breach of contract.  See Commonwealth v. Johnson

Insulation, 682 N.E.2d 1323, 1326 (Mass. 1997).   Therefore,   Massachusetts applies the discovery rule to breach of warranty actions as if they were tort claims.  See Burke v. Foremost Ins. Co., 18 Mass. L. Rep. 625; 2004 Mass. Super. LEXIS 621 at *12-13 (Mass. Super. Ct. Dec. 13, 2004) (holding that a breach of implied warranty claim for a defective mobile home – a good under the U.C.C. – is subject to the discovery rule).  It would be both unjust and nonsensical to apply the District's contract statute of limitations to a tort claim.

Defendant's other arguments against breach of warranty fail under Massachusetts law. Although Dr. Anderson was a learned intermediary, Massachusetts law requires Lilly to set forth affirmative proof that he would have ignored a warning.  As for Defendant's claim of lack of notice, in Massachusetts, failure to provide notice of breach of warranty shall not bar recovery unless the defendant shows that he was prejudiced by it.  See Ann. L. Mass. ch. 106, § 2-318. Defendant has made no showing of prejudice.

E.     Plaintiff Abandons Her Claim of Misrepresentation

Plaintiff abandons her claim of misrepresentation.

## V.     CONCLUSION

A reasonable juror could find that Lilly, the identified manufacturer of the DES in this case, had a major role in promoting DES.  Lilly has not produced any evidence that Dr. Gordon found DES by his own research or would have ignored warnings had there been any.  The word on Thalidomide got out very quickly.  Plaintiff can still rely on strict liability and her contention that DES, like Thalidomide, should never have been on the market to pregnant women.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant Eli Lilly and Company's Motion for Summary Judgment.

Respectfully submitted,

AARON M. LEVINE AND ASSOCIATES

_____/s/ Aaron M. Levine_____
Aaron M. Levine, #7864
1320 Nineteenth Street, N.W., Suite 500
Washington, D.C. 20036
(202) 833-8040

COUNSEL FOR PLAINTIFFS