Appendix 15

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MELISSA KELLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-1882 (RCL) |
| | ) | |
| ELI LILLY AND COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## ORDER

For the reasons set forth in the accompanying memorandum opinion, the defendant's

Motion [12] for Summary Judgment is hereby GRANTED.  Judgment is hereby entered in favor

of the defendant against the plaintiff, that plaintiff shall take nothing.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, April 27, 2007.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MELISSA KELLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 05-CV-1882 (RCL) |
| | ) |
| ELI LILLY AND COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

This matter comes before the Court on the defendant's Motion [12] for Summary

Judgment. Upon consideration of the defendant's motion, the plaintiff's opposition [14] thereto,

the defendant's reply [21] brief, the applicable law, and the entire record herein, the Court

concludes that the defendant's motion will be GRANTED. The Court's reasoning is set forth

below.

## BACKGROUND

While living in Massachusetts, pregnant with the plaintiff, the plaintiff's mother was

allegedly prescribed Diethylstilbestrol ("DES") by Dr. Safon in 1970 and 1971. (Def. Mot. 3.)

The plaintiff's mother was allegedly prescribed DES even through she was not experiencing any

unusual symptoms during her pregnancy. (*Id.*) The plaintiff was subsequently born at the

1

Boston Hospital for Women, in Boston. Massachusetts, on August 24, 1971. (*Id.*) The physician who allegedly prescribed DES to the plaintiff's mother, Dr. Safon. is now deceased. (*Id.*) According to both parties, there are no medical records demonstrating that Dr. Safon prescribed to the plaintiff's mother the defendant's DES, as opposed to a generic prescription or a specific prescription for another drug company's brand of DES. (*Id.*) In fact, both parties agree that there are no medical records or prescription records demonstrating that Dr. Safon prescribed the plaintiff's mother DES at all. (*Id.*)

The drug DES itself was never proprietary to any company. (*Id.* at 4.) During the time period that the plaintiff's mother allegedly ingested DES, there were only 6-8 national companies that produced DES and a number of companies who acted as local rebottlers. selling DES regionally. (Pl. Reply Br. 6.) Federal Regulations at the time of the plaintiff's mother's pregnancy required all manufacturers of prescription medications, such as DES, to provide instructions and warnings for physicians on prescription medications that could only be obtained through the order of a licensed medical practitioner. (*Id.*) The defendant, in producing its product literature never expressly rejected its use in pregnant women, having made reference to the use of DES in pregnant women no less than five times without warning or the risks or advising against its use during pregnancy. (*Id.* 6-7.)

Furthermore. the plaintiff has a letter, which if all inferences are given to the plaintiff, states that DES labeling was industry wide. with the defendant taking the lead with the Food and Drug Administration. (*Id.* at 7.) With the testimony of Dr. Richard Falk, the plaintiff contends that the defendant should have known and warned of the dangers of DES by 1953. (*Id.*) Through the testimony of Dr. Julius Piver, the plaintiff contends that had warnings regarding the

2

dangers of taking DES during pregnancy, it would have been a departure from the standard of care for an obstetrician to prescribe DES to a pregnant woman. (*Id.*)

The defendant contends and the plaintiff admits that the plaintiff has provided no evidence that Dr. Safon ever read or consulted the defendant's product warnings and literature in determining whether or not to prescribe a medication to the plaintiff's mother. (*Id.*) However, the plaintiff has a statement from the Pharmacist, Steven Baker, who worked at the Drug Fair Pharmacy where the plaintiff's mother allegedly filled her DES prescriptions during the relevant time period. The plaintiff states Mr. Baker would testify that if a woman came into the pharmacy during the relevant time period with a prescription for "DES," "Stilbestrol," or Diethylstilbestrol," the defendant's brand would have been dispensed.

The defendant now comes before the Court asking for its motion for summary judgment to be granted on all counts. The defendant argues that they are entitled to summary judgment as a matter of law because the plaintiff cannot come forward with any evidence that her mother's treating and prescribing physicians read or relied on any warnings or statements made by the defendant in deciding to prescribe the defendant's product to the plaintiff's mother.

## DISCUSSION

### 1. Choice of Law

Before this Court can address the defendant's motion for summary judgment on its merits, the Court must first determine the applicable law in this case. The basis for jurisdiction in this case is diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1), and thus state law provides the substantive rules of law for this case. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). In

3

deciding which substantive rules of law to apply, Federal courts must apply the choice of law

rules of the jurisdiction in which it sits. *Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d 876, 882

(D.C.Cir. 1985), cert. denied 479 U.S. 1060 (citing *Klaxon Co. v. Sentor Electric Mfg. Co.*, 313

U.S. 487 (1941)). In past DES cases, this Court has applied the choice of law principles based on

the interest analysis theory and/or the *lex loci delicti* theory, as in where the injury occurred.

*Tidler v. Eli Lilly Co.*, 95 F.R.D. 332, 334-335 (D.D.C. 1982). Under both of these choice of law

principles, the proper choice of law in this case would be Massachusetts state law.

     Under the interest analysis theory, also known as the governmental interest analysis, there

is an evaluation of the governmental policies underlying the applicable laws and a determination

of which jurisdiction's policy would be more advanced by the application of its law to the facts of

the case under review. *District of Columbia v. Coleman*. 667 A.2d 811. 816 (D.C., 1995) (citing

*Hercules & Co. v. Shama Restaurant*, 566 A.2d 31, 40-41 (D.C.1989)). In making this

evaluation, the District of Columbia has relied in part on the four factors enumerated in the

Restatement (Second) of Conflict of Laws § 145: a) the place where the injury occurred; b) the

place where the conduct causing the injury occurred; c) the domicile, residence, nationality, place

of incorporation and place of business of the parties; and d) the place where the relationship is

centered. *Id.* (citing *Estrada v. Potomac Elec. Power Co.*, 488 A.2d 1359, 1361 n. 2

(D.C.1985)). Part of the test for determining which jurisdiction's policy would be best advanced

is determining which jurisdiction has the most significant relationship to the dispute. *Id.* (citing

*Hercules*, 566 A.2d at 41 n. 18 (explaining parenthetically that the governmental interests test

and the most significant relationship test have sometimes been treated as separate approaches to

choice of law questions. but the courts have applied a constructive blending of the two

4

approaches).

In the present case, the plaintiff's exposure to DES took place in Massachusetts. (Def. Mot. 6-7.) Massachusetts was also: where the plaintiff's mother lived during the time of her pregnancy; where she was allegedly prescribed DES; where the mother allegedly filled her DES prescriptions; and ultimately the place where the plaintiff was born. (*Id.*) In light of these facts as applicable under both the interest analysis theory and *lex loci delicti* theory , the proper choice of law would be Massachusetts state law.

### 2. Summary Judgment

The defendant moves this Court for summary judgment on the argument that the plaintiff has not demonstrated the connection between the allegedly tortious act committed by the defendant and the claim of her injury.  Summary judgment is appropriate if the pleadings. depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Mass. R. Civ. P. Rule 56(c).[1]  The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact.  *Todd & Weld, LLP v. Arcidi*, 2004 Mass. Super. LEXIS 68, * 7 (citing *Pederson v. Time, Inc.,* 404 Mass. 14. 17. 532 N.E.2d 1211 (1989)).  In Massachusetts. a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he or she demonstrates by reference to material described in Rule 56(c). and is unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of

---

[1] The Massachusetts Rules of Civil Procedure are nearly identical to the Federal Rules of Civil Procedure on this issue. *Compare* Fed. R. Civ. P 56 *with* Mass. R. Civ. P. Rule 56.

proving an essential element of that party's case. *Auburn Merch. Distribs. v. Southland Corp.*,

1999 Mass. Super. LEXIS 61, * 9 (Mass. Super. Ct. 1999) (citing *Kourouvacilis v. General*

*Motors Corp.*, 410 Mass. 706, 716 (1991)).

While the Court does look at the pleadings submitted by the parties in ruling on summary

judgment, "conclusory statements, general denials, and factual allegations not based on personal

knowledge [are] insufficient to avoid summary judgment." *See Cullen Enterprises, Inc. v.*

*Massachusetts Property Ins. Underwriting Assoc.*, 399 Mass. 886, 890 (Mass. 1987) (citing

*Madsen v. Erwin*, 395 Mass. 715, 721 (1985) (quoting *Olympic Junior, Inc. v. David Crystal,*

*Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972)); *See McDonnell v. Flaharty*, 636 F.2d 184, 187 (7th

Cir. 1980); *Liberty Leasing Co. v. Hillsum Sales Corp.*, 380 F.2d 1013, 1014-1015 (5th Cir.

1967)). For a complaint to be accorded evidentiary weight in determining if there exists an issue

of material fact under Rule 56(c), the complaint must be in compliance with Rule 56(e). *See*

*Godbout v. Cousens.* 396 Mass. 254, 262-263 (1985).

To be in compliance with Rule 56(e), the complaint must be verified, in as far as it

contains specific facts that the signer knows to be true from personal knowledge. *See Pupecki v.*

*James Madison Corp.*, 376 Mass. 212, 217 (1978). When the complaint is not verified, the court

considers it only to ascertain the nature of the cause of action or defense and to guide the court in

determining which facts are material. *Godbout*, 396 Mass. at 262. Thus, allegations in an

unverified complaint are not accorded any evidentiary weight in determining if there is a genuine

issue of material fact under Rule 56. *Id.* Furthermore, affidavits provided by attorneys not made

on personal knowledge are not considered during the granting of summary judgment. *See*

*Pupecki*, 376 Mass. at 217 (footnoting *Shapiro Equip. Corp. v. Morris & Son Constr. Corp.*, 369

6

Mass. 968 (1976)).  Since the complaint in this case has only been signed by the attorney for the

plaintiff and not the plaintiff herself, averments made in the complaint shall not be considered

evidence in this motion for summary judgment.[2]

At the summary judgment stage, the rule requires that the plaintiff establish that at trial a

reasonable jury could find it is more probable than not that the injury was caused by the event for

which the defendant was responsible. *Spencer v. Baxter Int'l Inc.*, 163 F.Supp.2d 74, 77-78

(D.Mass. 2001). (citing *Samos Imex Corp. v. Nextel Communications, Inc.*, 194 F.3d 301, 303

(1st Cir.1999): *accord Forlano v. Hughes*, 393 Mass. 502, 507-08, 471 N.E.2d 1315, 1319-20

(1984)).  The plaintiff need not eliminate all possibility that the defendant's conduct was not a

cause.  It is enough that she introduce evidence from which a reasonable jury may conclude that

it is more probable that the event was caused by the defendant than it was not. *Id.* (citing *Carey

v. General Motors Corp.*, 377 Mass. 736, 740, (1979); *accord Colter v. Barber-Greene Co.*, 403

Mass. 50, 55 (1988)).

In this particular case, causation is an essential element to the plaintiff's claims of

negligence and breach of warranty.  Identification of the party responsible for causing injury to

another is a longstanding prerequisite to a successful negligence action. *Payton v. Abbott Labs*,

386 Mass. 540, 571 (Mass., 1982). (citing *See Smith v. Ariens Co.*, 375 Mass. 620 (1978)

(explaining that a plaintiff alleging injury caused by negligent design of snowmobile must prove

defendant manufactured same)).  This requirement serves two purposes: it separates wrongdoers

---

[2] While the attorney for the plaintiff did sign the complaint in compliance with Mass. R. Civ. Pro. Rule 11, that the information in the complaint is correct to his knowledge, such learned knowledge would constitute hearsay, which is insufficient to defeat a motion for summary judgment. *See Madsen v. Erwin*, 395 Mass. 715, 721 (1985) (stating that "hearsay in an affidavit is unacceptable to defeat summary judgment").

from innocent actors, and also ensures that wrongdoers are held liable only for the harm that they have caused. *Id.* Thus, to survive summary judgment, the plaintiff must establish that it is more probable than not that this defendant's DES in particular caused the harm which the plaintiff is now suffering from.

### A. Market Share Liability

While not expressly stating so, the plaintiff's argument is based in part on a theory of market share liability. The essence of the plaintiff's argument is that the defendant was the industry leader in labeling and the largest producer and distributer of DES in the region that the plaintiff's mother lived in during the time of her pregnancy; therefore the defendant should be held liable. (*See* Pl. Mot. 11-12, 16-19; Appx. 6, 9.) As aforementioned, identification of the party responsible for causing injury to another is a longstanding prerequisite to a successful negligence action. *Payton*, 386 Mass. at 571 (citing *See Smith*, 375 Mass. 620). Without addressing whether or not the plaintiff falls into the exception established in *Payton*,[3] this Court concludes that the plaintiff failed to join all of the possible defendants and thus cannot proceed on any theory involving alternative liability. *See Spencer*, 163 F.Supp.2d at 79-80; *Domestic Loan and Inv. Bank v. Ernst*, 1996 WL 680080 *3 (Mass.Super. 1996) (addressing that the allegations in the case did not meet the requirements imposed by courts that have recognized an alternative liability theory because bank did not join all possible defendants) (citing *See Zands v. Nelson*, 797 F.Supp. 805, 813 (S.D.Cal.1992)). Thus, for the plaintiff to survive summary

---

[3] The court in *Payton* stated: "That is not to say that on an adequate record this court would not recognize some relaxation of the traditional identification requirement in appropriate circumstances so as to allow recovery against a negligent defendant of that portion of a plaintiff's damages which is represented by that defendant's contribution of DES to the market in the relevant period of time." 386 Mass. at 574.

judgment, there must be enough evidence from which a reasonable jury may conclude that it is more probable than not that the event was caused by this particular defendant. *See Spencer*, 163 F.Supp.2d at 77-78 (citations omitted).

### B. Negligent Failure To Warn

Before the Court can address whether there are issues of triable fact surrounding the duty to warn, the Court must first determine to whom the defendant's duty to warn ran. The learned intermediary rule states that a drug manufacturer's duty to warn runs to the prescribing physician and not to the ultimate consumer of the product. *See Garside v. Osco Drug Inc.*, 976 F.2d 77, 80 (1st. Cir. 1992). Under this doctrine, the manufacturer's duty is fulfilled once it adequately warns the physician. *Id.* (citing *Thomas v. Hoffman-LaRoche, Inc.*, 949 F.2d 806, 811 (5th Cir.), cert. denied. 504 U.S. 956 (1992)). Furthermore. the Supreme Judicial Court of Massachusetts has held that where the pharmacist has no specific knowledge of an increased danger to a particular customer. the pharmacist has no duty to warn that customer of potential side effects. *Cottam v. CVS Pharmacy*, 436 Mass. 316, 322-323 (2002) (using as an example of specific knowledge *Hand v. Krakowski*, 89 A.D.2d 650 (N.Y. 1982), where a pharmacist failed to warn a customer of the drug's adverse interaction with alcohol where the customer was known by the pharmacist to be an alcoholic). However, in order for pharmacists to warn in those most specific of circumstances, they must have the knowledge in the first instance. Thus while they may not have a duty to warn, they as pharmacists must be warned. Having addressed this issue and establishing that the duty to warn ran from the company to both the doctor and to the pharmacist the Court may now address the merits of the defendant's motion.

Under Massachusetts law there is shifting burden in failure to warn cases: (1) the plaintiff

9

carries the initial burden of producing sufficient evidence that the defendant manufacturer failed

to warn of a non-obvious risk about which the manufacturer knew or should have known,

*Garside v. Osco Drug, Inc.*, 976 F.2d 77, 81 (1st Cir 1992) (applying Massachusetts law) (citing

*see MacDonald v. Ortho Pharmaceutical Corp.*, 475 N.E.2d 65, 68 (Mass. 1985); (2) assuming

the plaintiff raises a triable issue on this question, a rebuttable presumption arises that the

physician would have heeded an adequate warning, *Id.* (citing *see Knowlton v. Deseret Medical,*

*Inc.*, 930 F.2d 116, 123 (1st Cir 1991) (applying Massachusetts law)); (3) defendant must then

come forward with sufficient evidence to rebut that presumption. *Id.* (citing *see Knowlton*, 930

F.2d at 123); and (4) once the presumption is rebutted, plaintiff must produce sufficient evidence

to create a triable issue on the question of causation. *Id.* Massachusetts law further instructs

courts to be mindful that "generally, questions of causation, proximate and intervening, present

issues for the jury to decide." *Id.* (citing *Solimene v. B. Grauel & Co.*, 507 N.E.2d 662, 665

(Mass. 1987) (citations omitted)).

In light of the facts of this case, this Court must first determine whether the plaintiff has

satisfied her burden of producing sufficient evidence that the defendant failed to warn of a non-

obvious risk. Since this issue is raised upon a motion for summary judgment, the plaintiff is

entitled to all justifiable inferences. *Douillard v. LMR, Inc.*, 433 Mass. 162, 163 (2001). In

support of her position, the plaintiff has provided the statement of Dr. David Falk who swore that

the medical literature in 1953 called the use of DES during pregnancy into question. (Pl. Reply

Br. App. 22.) Dr. Falk further stated that such literature should have prompted further human

and animal testing. which would have lead to the discovery of the non-obvious risks of DES.

(*See Id.*) Plaintiff also provided the sworn statement of Dr. Julius Piver, who stated that had the

defendant issued warnings regarding DES for pregnancy use, it would have been a departure

from the standard of care for an obstetrician to prescribe DES to a pregnant woman. (See *Id.*

App. 23.) Beyond those two statements, plaintiff has presented and made reference to numerous

studies about the harmful effects of DES and presented evidence that DES was withdrawn from

the stream of commerce due to its harmful effects. (*See Id.* 4-5; App. 1-6.) Giving the plaintiff

every rational inference to which she is entitled, the plaintiff can be said to have satisfied her

burden, establishing a rebuttable presumption that were the warning given, Dr. Safon would have

heeded it.

Having established the rebuttable presumption in favor of the plaintiff, the burden is now

on the defendant to "come forward with sufficient evidence to rebut that presumption."

However, since this is a motion for summary judgment, the plaintiff is still entitled to every

rational inference in her favor. *Douillard*, 433 Mass. at 163 (2001). After examining the facts of

this case and both parties briefs, the Court finds that the defendant presented sufficient evidence

to rebut that presumption. In the undisputed facts of the case, the defendant asserts and the

plaintiff admits that there are no medical records or prescription records demonstrating that Dr.

Safon prescribed the plaintiff's mother DES at all.[4] (See Def. Mot 4); (Pl. Reply Br. 6.) In the

---

[4] The defendant's undisputed fact number six stated:

> Plaintiff has provided no medical records or prescription records
> demonstrating that Dr. Safon prescribed Lilly's diethylstilbestrol, as opposed
> to a generic prescription or a specific prescription for another drug company's
> brand of diethylstilbestrol to Plantiff's mother during her pregnancy with Ms.
> Kelley. In fact, Plaintiff has provided no medical records or prescription
> records demonstrating that Dr. Safon prescribed Mrs. Elman diethylstilbestrol
> at all." (Def. Mot. 3.)

The plaintiff's response was: "1-6 Admitted." (Pl. Reply Br. 6.)

11

absence of such evidence, a reasonable jury could not find that Dr. Safon, now deceased, in light

of everything stated in the plaintiff's pleadings, briefs and attached exhibits, ever prescribed DES

to the plaintiff's mother, much less that he prescribed the defendant's brand of DES. While the

plaintiff is entitled to every rational inference, a non-moving party may not defeat summary

judgment by relying upon mere allegations, evidence that is merely colorable, or evidence that is

not significantly probative. *Signet Electronics Systems, Inc. v. Town of Amherst*, 1993 WL

13144402 *6 (Mass.Super. 1993) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-250).

Without putting forth any evidence that Dr. Safon ever prescribed DES specifically for the

plaintiff's mother, there exists no evidence that would allow a reasonable jury reason to find that

Dr. Safon read the defendant's materials in the first place.[5]

Finding that the defendant has rebutted the presumption, the burden falls back upon the

plaintiff to produce sufficient evidence to create a triable issue of fact. As previously stated, the

plaintiff admitted that there are no prescription records demonstrating that Dr. Safon prescribed

DES to the plaintiff's mother at all. (Pl. Reply Br. 6.) The plaintiff, to establish that it was the

defendant's drug that harmed the plaintiff, relies on the statement of a Pharmacist, Mr. Steven

Baker. (Pl. Reply Br. 17.) In his statement, Mr. Baker swore that if a woman walked into his

pharmacy, the pharmacy where the plaintiff's mother allegedly shopped, with a prescription for

DES, Stilbestrol or Diethylstilbestrol, she would have walked out with the defendant's product.

---

[5] The plaintiff agrees with this proposition. The defendant's undisputed fact number ten stated:

> Plaintiff has proved no evidence demonstrating that Dr. Safon ever read or
> consulted Lilly's product warnings and literature in determining whether or
> not to prescribe a medication to Ms. Kelley's mother. (Def. Mot. 4.)

The plaintiff's response was: " 8-10 Admitted." (Pl. Reply Br. 6.)

(Pl. Reply Br. App. 7.) Giving the plaintiff every rational inference, absent any proof that the plaintiff's mother did in fact purchase DES from that pharmacy, this evidence is merely colorable and not enough to create a triable issue of fact.[6]

The case at hand is clearly distinguishable from *Baughn v. Eli Lilly & Co.*, 356 F.Supp.2d 1177 (D.Kan. 2005), a case the plaintiff cites in support of her position. In *Baughn*, Barbara Baughn filed a product liability action against Eli Lilly because her mother took DES while she was pregnant. *Id.* at 1179. In the undisputed facts of the case, Ms. Baughn's mother was prescribed DES by Dr. Burkman and purchased her DES at the pharmacy attached to Dr. Burkman's office, which was owned by the same Dr. Burkman. *Id.* In establishing that there was a triable issue of fact as to whether it was Eli Lilly's DES that caused harm to Ms. Baughn, the testimony of Ms. Joan Augustine, a nurse for Dr. Burkman, was relied upon. *Id.* at 1181. Ms. Augustine testified that she helped fill some prescriptions in the pharmacy when the pharmacist was unavailable and that she only recalled DES from Eli Lilly being on the shelf during the time that Ms. Baughn's mother ingested DES. *Id.* at 1180-1181. The court in that case found that a reasonable jury could conclude, that during the relevant time period, Dr. Burkman only prescribed DES manufactured by Eli Lilly. *Id.* at 1181.

In the present case, there is no such nexus between Dr. Safon, the Drug Fair, and the DES allegedly ingested by the plaintiff's mother. As aforementioned, there is no evidence that Dr.

---

[6] In her brief, the plaintiff states as a "genuine fact in issue" that Mr. Baker worked at the Drug Fair Pharmacy where the plaintiff's mother filled her DES prescriptions. However, nothing the plaintiff has provided demonstrates any support of this assertion. Nothing in Mr. Baker's statement indicates that he had any personal knowledge of the plaintiff's mother nor ever indicated that the plaintiff's mother did frequent the store. (See Pl. Reply Br. App 6.) Furthermore, the plaintiff admitted that there are "no medical records or prescription records demonstrating that Dr. Safon prescribed Lilly's diethylstilbestrol." (Pl. Reply Br. 6.)

Safron prescribed DES to the plaintiff's mother, nor any evidence that Mr. Baker filled any DES

prescriptions for the plaintiff's mother. (*See* Def. Mot 4); (Pl. Reply Br. 6.) There is no evidence

that would allow there to be a rational inference made that Dr. Safon knew of the Drug Fair Mr.

Baker worked at, nor of the actual products carried by that Drug Fair. (*See Id.*) In the absence of

such a nexus, the beneficial inference made for Ms. Baughn cannot be made for this plaintiff.

The plaintiff contends that if the heeding presumption is found not to apply to Dr. Safon,

the defendant had a duty to warn all persons in the medical profession who have any sort of

decision-making capacity. *See Guevara v. Dorsey Lab. Div. Of Sandoz, Inc.*, 845 F.2d 364, 367

(1st Cir. 1988). However, in Massachusetts the duty to warn does not run to a pharmacist absent

specific knowledge of an increased danger to a particular customer. *Cottam*, 436 Mass. at 322-

323. While an argument could be made that a pharmacist cannot warn unless they know all of

the specific damages in the first instance, the Court need not reach such a question on its merits.

In this case, there is no evidence linking the plaintiff's mother to the Drug Fair. Furthermore,

were the court to presume that the plaintiff's mother did frequent the Drug Fair, there is no

evidence indicating Mr. Baker had any specific knowledge about the plaintiff's mother that

would have required him to give such a warning.[7] *See Cottam*, 436 Mass. at 322-323. Absent

such evidence, the plaintiff cannot be given the inference that Mr. Baker would have given her

the defendant's DES and would have then had a duty to warn her in light of her pregnancy.[8] *See*

---

[7] For instance, there is nothing any of the plaintiff's materials indicating Mr. Baker's
knowledge that the plaintiff's mother was pregnant.

[8] It is this fatal flaw. the plaintiff's lack of evidence demonstrating any specific
knowledge on the behalf of Mr. Baker. that causes the Court to reject all of the plaintiff's claims
as they relate to the defendant's multiple negligence and warranty claims and Mr. Baker.

*Id.*

### D. Negligent Misrepresentation

Massachusetts courts have held that in order to recover for negligent misrepresentation, a plaintiff must show that the defendant: (1) in the course of its business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information. *Cummings v. HPG Intern., Inc.* 244 F.3d 16, 24 (1st Cir. 2001) (applying Massachusetts law) (citing *Fox v. F & J Gattozzi Corp.*, 672 N.E.2d 547, 551 (Mass. App. 1996) (citing Restatement (Second) of Torts § 552(1) (1977)); *see also Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 41 (1st Cir.1998)). The key element the plaintiff fails to establish in the claim for negligent misrepresentation is the justifiable reliance upon the information. Since the plaintiff has produced no medical records or prescription records that Dr. Safon ever prescribed the defendant's DES to the plaintiff's mother, or relied on the defendant's literature, the plaintiff's claim for negligent misrepresentation fails. (*See* Def. Mot 3): (Pl. Reply Br. 6.) Therefore, in light of these facts, no rational jury could find reliance on the defendant's product warnings.

### E. Breach of Warranty and Strict Liability

In the complaint the plaintiff alleges that the defendant breached the implied and express warranties it provided with the DES it manufactured and promoted. While the plaintiff does not specifically address what warranty the defendant breached, as a matter of law, given all the rational inferences she is entitled in this summary judgment motion, the plaintiff's claim under

15

all of the warranties recognized by the State of Massachusetts fail.

Furthermore, in product liability cases, Massachusetts does not have a strict liability tort apart from liability for breach of warranty under the Uniform Commercial Code, codified by Massachusetts under MASS. GEN LAWS ANN. Ch. 106, §§ 2-314 to 2-318. *Swartz v. General Motors Corp.*, 375 Mass. 628, 629 (Mass., 1978.) Amendments to the Massachusetts version of the Uniform Commercial Code made it clear that the Legislature transformed warranty liability into a remedy intended to be as fully comprehensive as the strict liability theory of recovery that has been adopted by many other jurisdictions. *Back v. Wickes Corp.*, 375 Mass. 633, 639 (1978). (citing *See Swartz v. General Motors Corp.*, 375 Mass. 628, 629 (1978); *Hoffman v. Howmedica, Inc.*, 373 Mass. 32 (1977)). Since this Court finds that the plaintiff's breach of warranty claims fail, so to do the plaintiff's strict liability claims.

### 1. Breach of Express Warranty

Under the Massachusetts law governing express warranties : (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise; (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description; or (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the sample or model. MASS. GEN LAWS ANN. Ch. 106, § 2-313. Furthermore, in an express warranty claim, plaintiff must show reliance on such warranty. *Sprague v. Upjohn Co.*, 1995 WL 376934 *3 (D.Mass. 1994) (citing *Roth v. Bay-Stel's Hair Stylists, Inc.*, 18 Mass.App.Ct. 975, 976 (1984)). The plaintiff admits that she has no medical records that Dr.

16

Safon prescribed DES to the plaintiff's mother, nor evidence that Dr. Safon ever read the

defendant's product warnings. (*See* Def. Mot 3-4); (Pl. Reply Br. 6.) Furthermore, the plaintiff

in the twenty-four exhibits she submitted to the Court, provided little evidence to support

affirmatively that either the plaintiff's mother was prescribed DES from Dr. Safon, frequented

the Drug Fair that Mr. Baker was a pharmacist at, or most importantly, that the plaintiff's mother

ingested DES produced by the defendant. What the plaintiff has provided is allegations and

speculation with an assortment of seemingly related facts. To survive summary judgment, there

must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

party. *Anderson*, 477 U.S. at 249 (citing *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S.

253, 287 (1968)). In this case, there is a dearth of evidence that could support a jury verdict, for

the evidence that the plaintiff has put forth is colorable at best. *Id.* at 250 (stating that "if the

evidence is merely colorable, or is not significantly probative, summary judgment may be

granted.") (citations omitted).

### 2. Implied Warranty of Merchantability

Under Massachusetts law, a theory of liability based upon implied warranty is "congruent

in nearly all respects with the principles expressed in §402A of the Restatement (Second) of

Torts (1965)." *Sprague*, 1995 WL 376934 at *3 (citing *Back*, 375 Mass. at 640 (1978); *See also*,

*Anderson v. Owens-Illinois, Inc.*, 799 F.2d 1, 2 (1st Cir.1986); *Colter v. Barber-Greene Co.*, 403

Mass. 50, 61 (1988); *Correia v. Firestone Tire & Rubber Co.*, 388 Mass. 342, 353, 446 N.E.2d

1033 (1983) (claims based upon a breach of implied warranty "sound essentially in tort")).

Furthermore, the Supreme Judicial Court of Massachusetts recognized that prescription drug

cases must be evaluated under the principles of negligence. *Id.* (citing *Payton v. Abbott Labs*,

17

386 Mass. 540, 573 (1982)). This rule has been followed by both the Supreme Judicial Court and federal courts applying Massachusetts law. *Id.* (citing *See, e.g., Garside.*, 976 F.2d 77; *MacDonald.*, 394 Mass. 131; *Sanderson v. Upjohn Co.*, 578 F.Supp. 338 (D.Mass.1984)). Thus, in accordance with Massachusetts law and the precedent set forth within the First Circuit, this Court consolidates the plaintiff's breach of implied warranty claim with her claims of negligence and for the same reasons set forth above granting the defendant summary judgment on the issues of negligence, this Court grants the defendant summary judgment on the implied warranty of merchantability. *See Id.*

### 3. Implied Warranty of Fitness for a Particular Purpose

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. there is unless excluded or modified ... [,] an implied warranty that the goods shall be fit for such purpose." MASS. GEN LAWS ANN. Ch. 106, § 2-315. Given the shear lack of evidence to support the plaintiff's allegations in this case, this claim of the plaintiff must fail as well. The plaintiff admits that she has no medical records that Dr. Safon prescribed DES to the plaintiff's mother, nor evidence that Dr. Safon ever read the defendant's product warnings. (*See* Def. Mot 3-4): (Pl. Reply Br. 6.) It is this Court's belief that Mr. Baker's statement regarding the likelihood of a woman entering his store with a prescription for DES and receiving the defendant's DES, without more, is insufficient to establish that Dr. Safon relied on the defendant's skill when he allegedly proscribed DES to the plaintiff's mother. Absent even the most basic of evidence demonstrating that Dr. Safon relied in any way on the defendant's warning, the plaintiff's claims do not rise above colorable facts and cannot survive a motion for

18

summary judgment. *Anderson*, 477 U.S. at 249 (citing *Dombrowski v. Eastland*, 387 U.S. 82 (1967) (per curiam )).

### F. Punitive Damages

Since the Court finds that the plaintiff lacks a viable cause of action in this case, the plaintiff may not receive punitive damages.

## CONCLUSION

Under Massachusetts law, the plaintiff in this case has failed to provide enough evidence for a reasonable jury to conclude it is more probable than not that the defendant's product did cause harm to the plaintiff. Accordingly, the defendant's Motion for Summary Judgment on all counts will be GRANTED. A separate order shall issue this date.


SO ORDERED

Signed by Royce C. Lamberth, United States District Judge, on April 27, 2007.